VERNON METAL AND PRODUCE COMPANY, INC., Respondent, Appellant, v. THE JOSEPH JOSEPH & BROTHERS COMPANY, Appellant, Respondent.

First Department, March 20, 1925.

Partnership — joint venture — action for accounting — plaintiff, who had purchased scrap from United States government, entered into joint venture with defendant — defendant agreed to pay plaintiff same price per ton as plaintiff paid, to recondition scrap, sell it, and pay plaintiff one-half net profits — payments to government, made on requisitions by plaintiff, exceeded value — plaintiff engaged and paid counsel to defend his bid — neither item is chargeable to joint venture — on appeal from final judgment, Appellate Division may correct findings on which interlocutory judgment based — defendant not bound by statements in accounts which were marked "errors and omissions excepted"— overhead expense of defendant properly chargeable against joint venture.

For the purpose of determining the net profits of a joint venture entered into between the plaintiff, who had purchased scrap from the United States government at a stated price per ton, and the defendant, who agreed to pay the plaintiff the same price per ton, to recondition the scrap, to sell the same, and to pay the plaintiff one-half the net profits, the overpayment made by the defendant, through the plaintiff and on plaintiff's requisition, to the United States government, and the amount that the plaintiff paid to counsel to defend the validity of his bid and the contract for purchase from the United States government, are not properly chargeable to the joint venture, but are items for which the plaintiff itself is responsible.

Notwithstanding that the decision on which the interlocutory judgment for an accounting was granted is based on findings that a balance was due the plaintiff, the Appellate Division may, on appeal from the final judgment, on which appeal the defendant asks the court to review the interlocutory judgment, correct the findings made so that a correct judgment may be rendered.

The defendant is not bound by statements in the accounts submitted to the plaintiff, where it appears that the statements contained the well-known trade expression, " E. and O. E.," signifying " errors and omissions excepted."

The defendant is entitled to charge against the joint venture the proportionate overhead expenses of its business based on the total sales of the entire business.

APPEAL by the defendant, The Joseph Joseph & Brothers Company, from a final judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 10th day of July, 1924, upon the report of a referee, as modified by an order entered in said clerk's office on the same day, with notice of intention to bring up for review said order in so far as it disallows a charge to the joint account between the parties of a reasonable sum for overhead expenses, and also an interlocutory judgment in favor of the plaintiff, entered in said clerk's office on the 17th day of January, 1923.

Appeal by the plaintiff, Vernon Metal and Produce Company, Inc., from said order, modifying the report of the referee appointed to take and determine the account between the parties in so far as it states the account between the parties hereto as showing a balance due the plaintiff of $4,655.37 instead of $7,975.46, as found and stated by said referee, and also from the final judgment in so far as it awards to the plaintiff the sum of $4,655.37 instead of $7,975.46 and costs.

*Alfred Frankenthaler* [*A. S. Gilbert* of counsel], for the plaintiff.

*Stern, Barr & Tyler* [*Henry C. Moses* of counsel], for the defendant.

MERRELL, J.:

The defendant in appealing from the interlocutory judgment does so for the purpose of correcting a finding which the defendant, appellant, alleges was improperly made to the interlocutory decision to the effect that the defendant holds a sum of money which represents a portion of the profits to which the plaintiff is entitled and for which the defendant refuses to account or turn over to the plaintiff. This finding the defendant insists is incorrect because of the fact that on a fair accounting between the parties there is a balance due the defendant from the plaintiff of $909.86. Reference will hereafter be made to such claim of the defendant.

It appears from the evidence taken before the referee that the plaintiff purchased from the United States government a quantity of condemned shells of about 12,000 tons at eight dollars and ninety-six cents per ton. The plaintiff obtained the contract for said shells upon an award on competitive bidding. The defendant was not a party to the bidding nor to the award which was made to the

plaintiff by the United States government. On February 10, 1919, the plaintiff and defendant entered into a contract of joint venture with reference to the 12,000 tons of shells which had been condemned by the government as scrap whereby the defendant agreed to reimburse the plaintiff for what it had paid the government for said scrap and was to put the material in merchantable condition and pay to plaintiff one-half of the profits made by defendant on the transaction. The contract between the parties as finally confirmed was in the following written form:

> " VERNON METAL & PRODUCE COMPANY, INC.
> " 25 Beaver Street
> " New York.  " *February* 10, 1919.

" Messrs. JOSEPH & JOSEPH & BROTHERS CO.,
   " Woolworth Building,
       " New York:

" DEAR SIRS.— We refer to the purchase made by us from the United States Government of approximately twelve thousand (12,000) tons of shells which have been condemned as scrap, now at the Gillespie Plant, Morgan, New Jersey.

" This will confirm our sale to you of this material upon the same conditions as those in the sale to us, and at the price to be paid by us to wit: Eight dollars and ninety-six cents ($8.96) per gross ton, and for the further consideration of one-half of the profits made by you on the transaction.

" Whenever a payment is to be made to the Government on the purchase we shall notify you, you will at once send us your check and we will then make the payment to the Government. You will do all that may be necessary to put the material into merchantable condition, and will sell the same. Following your suggestion you will send us promptly copies of all correspondence and orders relating to the sale of the material, and keep us closely advised of what is going on.

" You will keep separate accounts of the transaction and give us access (if requested) to the books in which they are contained. You will pay us one-half of the net profits upon this transaction, as profits may be realized.

> " Yours very truly,
> " VERNON METAL & PRODUCE CO. INC.
> " I. J. LOUIS,
> " *Secy & Treas.*"

It will thus be seen that it was agreed that the defendant should be charged for the shell scrap which the plaintiff had purchased from the government at the same rate the plaintiff paid therefor,

VERNON M. & P. Co., Inc., v. Joseph & Bros. Co.     361

App. Div. 358]          First Department, March, 1925.

$8.96 a ton.  The evidence shows that pursuant to the written agreement above mentioned requisition was made from time to time upon the defendant to pay for such shipments as the government made of said scrap, and that immediately upon receiving such requisitions the plaintiff received from the defendant the latter's check therefor at the rate of $8.96 per ton for the scrap shipped.  The defendant actually paid for the scrap on plaintiff's requisitions $1,676.24 in excess of the amount of scrap actually received from the government, and that item of $1,676.24 constitutes one of the items of dispute between the parties.  The defendant reconditioned and resold the scrap for the joint account of both parties.  As deliveries were made the defendant paid the plaintiff for the merchandise and plaintiff in turn paid the United States government.  The first payment sent was a cashier's check for $22,000 to the order of the Treasurer of the United States, which the plaintiff turned over to the government.  Exclusive of the claimed overpayment of $1,676.24, the defendant paid to the plaintiff the sum of $38,478.39.  While reselling the scrap the evidence shows that the defendant was working under a considerable overhead expense.  Another item in dispute between the parties is for the sum of $3,500 which the plaintiff insists was an expenditure in furtherance of the joint account of the parties.  The government refused to repay the overpayment made to it of $1,676.24.  The plaintiff claims that a very delicate situation existed and it fairly appears that the government was charging illegal and dishonest practices in relation to obtaining the award, and the plaintiff engaged special counsel at an expense of $3,500 to protect its interests.  The plaintiff now claims that this charge and as well the overpayment to the government should be borne equally by the joint adventurers.  The referee held with the plaintiff and allowed both said items as a part of the legitimate expenses of the joint adventure.  On motion to confirm the report of the referee, the court at Special Term struck out both of said items upon the ground that the evidence showed that both items should be borne by the plaintiff.  The contract clearly is to the effect that there was no joint venture between the parties until after the plaintiff had received the award and purchased the scrap, and that the joint adventure relates only to the reconditioning and selling of the scrap by the defendant, and each party was to receive one-half of the net profits from the transaction.  Plaintiff, under the contract, was obligated to deliver to the defendant the scrap shells at $8.96 per ton.  If any overpayment was made which the government refused to refund it was in connection with obtaining the award and for which the defendant should not be held, and when

the plaintiff found it necessary to employ special counsel to protect the award and possibly to save the individual members of its corporation from criminal prosecution, that expenditure should not be deducted as part of the expenses of the venture. In its complaint the plaintiff alleges that " the plaintiff and defendant entered into an agreement whereby it was mutually agreed by and between them to enter upon and they did 'enter upon a joint venture to put the material contained in said shells into merchantable condition and sell same for 'their mutual advantage and profit.'' This allegation undoubtedly describes the relation between the parties. It was a joint venture which went into effect subsequently to the purchase of the scrap by the plaintiff and any expenditures which the plaintiff made in order to sustain its purchase of the government was properly chargeable to the plaintiff alone, as the plaintiff had merely sold the scrap at $8.96 per ton. I am, therefore, of the opinion that the Special Term was entirely correct in disallowing the two items mentioned.

The only other question involved upon this appeal arises on the appeal of the defendant, and presents the question as to whether or not the defendant is entitled to the allowance of a reasonable sum for overhead. As the account was stated by the referee there remained a net balance due from the defendant to the plaintiff of $7,975.46. The Special Term to whom the motion was made to confirm the report of the referee restated the account by disallowing the two items mentioned and left a total balance, plaintiff's due from the defendant, of $4,655.37. To this was added the sum of $633.50, costs as taxed, making a total of $5,288.87. The defendant proved upon the trial that its total sales in all its business amounted to $17,467,758.74; that its total overhead expense was $662,492.29; and that the percentage of overhead to sales was three and eight-tenths; and that the sales in the joint transaction between the parties amounted to '$237,067.57. Applying said percentage of overhead to sales would make the amount of overhead chargeable against the contract in suit to be $9,008.56, and one-half thereof, $4,504.28. The Special Term found that the net balance due plaintiff from defendant, besides interest, was $3,594.42. If defendant is entitled to the overhead claimed of one-half of $9,008.56, or $4,504.28, then the plaintiff is indebted to the defendant in the sum of $909.86. It is true that in the decision upon which the interlocutory judgment· was granted it was found and decided that there was a balance due the plaintiff from the defendant which the defendant has failed and neglected to pay. The defendant, however, upon this appeal asks to review said interlocutory judgment, and I think it is within the power of

the court to correct the findings made upon the rendition thereof, so that a correct judgment may be rendered.

I think the defendant is entitled to a proper allowance for overhead. No business can run except by allowing for its overhead expenses. The profits of the transaction were over $80,000 and more than thirty-three and one-third per cent of sales. In the account no charge whatever was made for overhead. The contract itself provided that the defendant was to pay to the plaintiff one-half of the profits on the transaction. Certainly the overhead expense of the defendant should be deducted in arriving at the amount of the profits. Defendant had expenses for rent, for salesmen, and many other items going to the maintenance of its organization. The plaintiff had no overhead so far as this transaction was concerned, as it merely sold the scrap to the defendant at $8.96 per ton. The entire work of reconditioning and disposing of the scrap was put upon the defendant. Objection is made by the plaintiff that such overhead was a last-minute discovery of the defendant, and that the defendant should be bound by accounts rendered. However, all of said accounts contained the well-known trade expression, " E. and O. E.," signifying " errors and omissions excepted."

The findings upon which the interlocutory judgment was granted, inconsistent herewith, are disapproved, and judgment is directed in favor of defendant and against plaintiff. The final and interlocutory judgment of the Special Term should be reversed, with costs, and judgment should be directed for the defendant against the plaintiff for $909.86, with costs.

DOWLING, FINCH, MCAVOY and MARTIN, JJ., concur.

Final and interlocutory judgment reversed, with costs, and judgment directed for defendant for $909.86, with costs. Settle order on notice.