Argued February 24, reversed March 16, 1926.

E. H. ELLIOTT v. MURPHY TIMBER CO.

(244 Pac. 91.)

Joint Adventures.

1. Joint adventurer in logging project may not charge to expense of operation discounts allowed purchasers without allowing credit for discounts received.

1. See 15 R. C. L. 502.

Account.

2. Where contract between parties to logging project, one of whom handled finances, called for sharing of profits, he must account.

Account.

3. Duty to account arises whenever one party has profits in which another is entitled to share, regardless of relationship when earned.

Master and Servant.

4. Employer, having profits in which employee is entitled to share by contract, must account to employee.

Joint Adventures—Agreement to Transfer Logging Contracts and Manage Logging Operations for Salary and Share in Profits Constituted Parties "Joint Adventurers."

5. Agreement by one party, on sale of equipment to other, to transfer logging contracts and to manage logging operations in return for salary and contingent share in profits and equipment, *held* to constitute parties "joint adventurers."

Joint Adventures—Corporate Joint Adventurer in Logging Project may not Charge Account With Salaries of Officers and Office Expense.

6. Where one joint adventurer in logging project managed logging, and the other, a corporation with many such projects, the office, the latter may not charge their account with arbitrary proportion of the salaries of its officers and office expense.

Joint Adventures.

7. Joint adventurer who is to advance funds cannot charge expenses incurred in obtaining them.

Joint Adventures—Joint Adventurer Who Kept Account of Venture Intermingled With Other Transactions Held not Entitled to Charge Therefor.

8. Where joint adventurer in logging project, who was to keep the books, intermingled the account with other transactions so that the state of accounts was difficult to ascertain and the expense of keeping them could not be told, it was not entitled to charge therefor.

Accounts and Accounting, 1 C. J., p. 624, n. 75.
Joint Adventures, 33 C. J., p. 842, n. 5, 13, p. 844, n. 47, p. 858, n. 92, p. 860, n. 40, p. 861, n. 54, p. 864, n. 91 New, p. 97, 97 New.

From Multnomah: WALTER H. EVANS, Judge.

Department 2.

REVERSED.

2.   See 20 R. C. L. 1011.
5.   See 15 R. C. L. 500.

For appellant there was a brief and oral argument by *Mr. Martin L. Pipes.*

For respondent there was a brief and oral argument by *Mr. Sidney J. Graham.*

RAND, J.—This is a suit to compel the defendant to account to plaintiff for alleged profits growing out of their joint performance of a contract, which was entered into between them on February 21, 1917, and which was completely executed on plaintiff's part on June 30, 1921. Except as hereinafter stated, the contract consisted of a written offer and acceptance, which because of a dispute over its legal effect is set forth at length, and is as follows:

"Portland, Oregon, Feb. 21st, 1917.
"Mr. E. H. Elliott,
"Portland, Oregon.
"Dear Sir: Confirming our verbal understanding regarding the purchase of the logging equipment and contracts of the Bramhall Timber Company by our company, and in consideration of valuable services rendered by you in acquiring said property, and the further consideration of valuable services rendered and to be hereafter rendered by you in the operation of said logging contracts, and in further consideration of the sum of $1.00, to us in hand paid, the receipt of which is hereby acknowledged, we hereby agree that after the net profits accruing under these logging contracts shall amount to a sum equal to the sum paid the Bramhall Timber Company for said equipment and contracts plus the amount paid for any new equipment which may be purchased or acquired by us in logging under these contracts, we agree to transfer to you an undivided one-third interest in said equipment and contracts, and we agree that you shall be entitled to receive and we will pay to you one-third of all of the future net profits which

may be made in logging under the contracts acquired from the Bramhall Timber Company, it being understood, however, that you are to receive no net profits until the purchase price and cost of the above mentioned equipment, including any new equipment purchased to log under the Bramhall Timber Company contracts has been repaid from the net profits as herein specified.

"We further agree that we will pay to you to manage under our direction logging operations under the contracts purchased from the Bramhall Timber Company the sum of $200 per month as salary, said amount to be charged to the expense of logging operations.

"Yours truly,
"Murphy Timber Company.
"By Edward Murphy, Pres.
"By B. J. Vaughan, Secy.

"Accepted:
"E. H. Elliott."

On July 4, 1918, this contract was modified by an oral agreement of the parties that thereafter plaintiff should receive $250 per month, instead of $200 per month, and on October 8, 1919, it was further modified so as to comply with the terms of the following letter:

"Portland, Oregon, Oct. 8th, 1919.
"Murphy Timber Co.,
"Portland, Oregon.

"Gentlemen: In consideration of your advancing more money than you first agreed to at our operation at Kerry, Oregon, I hereby agree to accept a one-quarter interest in the profits of said operation when we have finished there instead of a one-third interest as our present contract calls for.

"Yours very truly,
"E. H. Elliott."

After the execution of the contract, the parties thereto entered into the performance thereof, and continued to perform the same until the termination of the enterprise on June 30, 1921. Some forty-one million feet of logs were cut and marketed under the contract. After the termination of the enterprise, plaintiff demanded of defendant, a statement of the amounts which the defendant had expended and received in carrying out the contract. Defendant rendered a statement which showed an excess of expenditures over receipts, and it is now admitted that in some respects the statement so rendered was incorrect. Being dissatisfied therewith, this suit was instituted, and from the evidence introduced, the trial court found that in performing the contract, the defendant had received the aggregate amount of $441,-917.68; both parties concede the correctness of this finding. The court also found that in carrying out the contract, the defendant expended the sum of $468,229.74; this amount is in dispute on this appeal. It also found that the defendant received the sum of $2,285.54 in excess of the amount he was entitled to receive as salary under the contract; this finding is not disputed by plaintiff. A decree was entered in conformity to these findings, dismissing plaintiff's complaint with prejudice, and giving judgment in favor of defendant for $2,285.54, with costs and disbursements, from which decree plaintiff appealed.

Going to make up this sum of $468,229.74, which the court found to be the aggregate of the expenditures made by defendant under the contract, are two items, both of which plaintiff contends were not properly chargeable under the contract, and these are the only items in dispute upon this appeal. The first is for $1,966.26, the aggregate of an account appearing

on defendant's books as "discounts paid"; the other is for $27,299.25, an amount arbitrarily fixed by defendant as a proportionate part of the salaries of its officers, and of the rentals and other expenses of its Portland office during the time this contract was being performed. If the amount of these two items cannot properly be included as an expenditure under the contract, the total cost of operation would be only $438,963.23, which would leave a profit of $2,954.45, and vest a one-third interest in the equipment in plaintiff.

1. We think that neither of these two items should have been included in the computation made by the trial court. The first consists of discounts allowed by defendant to purchasers of logs for prompt payment of current bills, and would be allowable if corresponding discounts obtained by defendant in payment of the joint bills had been accounted for. There is no proof from which the amount of discounts obtained by defendant in carrying on the enterprise can be computed, and it would be inequitable for defendant to charge plaintiff's account with discounts in the one case, without giving him credit for discounts in the other.

2–4. Before considering the other disputed item, it is necessary to dispose of the principal legal contention in controversy upon this appeal. Plaintiff contends that under the terms of the contract, the parties, while engaged in its performance, were joint adventurers, and that their rights and liabilities are to be determined by the same rules that govern in ordinary partnership cases, while defendant contends that the contract is a mere contract of employment, and creates a relation of agency only, and that the rules of law applicable to an accounting between partners

ought not to be applied in this suit.   We do not deem this question very material to the determination of the suit.   Whatever their relation may have been, their rights and liabilities rest upon their agreement, and where a contract provides as this does, for payment by one party to another of profits received, it is the duty of the one receiving such profits to account to the other, for otherwise there would be no way by which such party could determine whether there were any profits.   The duty to account arises whenever one party is in possession of profits to which another person is entitled to share, regardless of what their relationship may have been at the time the profits were earned.   When an employer has received profits in which, by the terms of his contract, an employee is entitled to share, it is as much his duty to account to the employee as it would be if the relation of partners or joint adventurers existed between them.   ''The right to go into equity for an account is not confined to a partner.   Any employee paid by a share of the profits may maintain a bill for an account, though he is not a partner, since a court of law is unable to take such an account: *Harrington* v. *Churchward,* 29 L. J. N. S. Ch. 521; *Katsch* v. *Scheneck,* 13 Jur. 668; *Ferry* v. *Henry,* 4 Pick. (Mass.) 75; *Hallett* v. *Cumston,* 110 Mass. 32; *Bentley* v. *Harris,* 10 R. I. 434 (14 Am. Rep. 695) (distinguishing *Hazard* v. *Hazard,* Fed. Cas. 6279 (1 Story, 371).''   Parsons on Partnership (4 ed.), § 54, n. 1.

5. In support of its contention, defendant cites numerous Oregon decisions defining and describing partnerships.   These decisions are not controlling upon the question of whether the parties to this contract were joint adventurers.   A joint ad-

venture is analogous to, but not identical with, a partnership. It has been defined as, "An association of two or more persons to carry out a single business enterprise for profit" (*Fletcher* v. *Fletcher,* 206 Mich. 153), and is "usually but not necessarily, limited to a single transaction, although the business of conducting it to a successful termination may continue for a number of years." 33 C. J., p. 842. "This name seems to be applied to those special combinations of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation. All such persons are partners or *quasi* partners, rather than joint or common owners; * * with essentially the rights and disabilities which pertain to the partnership relation, although less comprehensive or permanent in the scope intended." Schouler on Personal Property (5 ed.), § 167a. See, also, *Salem-Fairfield Telephone Assn.* v. *McMahan,* 78 Or. 477 (153 Pac. 788), and *Campbell's Gas Burner Co.* v. *Hammer,* 78 Or. 612 (153 Pac. 475).

The consideration recited in the contract for defendants entering into it is, "valuable services rendered by you in acquiring said property"; "valuable services * * to be hereafter rendered by you in the operation of said logging contracts," and the sum of $1 paid to defendant by plaintiff. The import of this recital is, that plaintiff was a promoter of the enterprise, and so the testimony shows. This contract is more than a contract of employment, and creates more than an agency. It gives plaintiff an interest in the profits as profits, contingent only, upon the net profits equalling or exceeding defendant's expenditures in carrying out the contract, including the cost of equipment. The fact that plain-

tiff might, or might not, receive any profit under the contract is wholly immaterial upon the question of whether this was a joint adventure. All joint adventures are attended with the risk of not being profitably terminated, and money considerations are not ordinarily paid by an employee to an employer as a consideration for his employment. For these, and other reasons, we think the contract created between plaintiff and defendant the relation of joint adventurers.

6, 7. The testimony offered on behalf of defendant shows that the item of $27,299.25 is made up of an arbitrary proportion, made without defendant's knowledge or consent, of the salaries paid by the corporation to its own officers and employees, and of the rentals and other expenses of maintaining its principal offices at Portland, Oregon, during the period of four years and four months, while the business of this enterprise was being conducted. That during all of said time defendant was engaged in numerous other similar logging enterprises, in which plaintiff had no interest, and that these expenses would have been incurred had this particular enterprise not been engaged in. There is no provision in the contract entitling the defendant to make any charge for services rendered by it of the nature and character above referred to. "Unless the contract so provides, no member of a joint adventure is entitled to any compensation for services rendered by him toward the common enterprise." 33 C. J., p. 860, § 65. "A party who is to advance funds cannot charge expenses which he paid in obtaining them. Allowance cannot be made for expenses not actually incurred in prosecuting the business of the adventure. There can, ordinarily be no charge for services of a

party unless it is so agreed.'' 2 Rowley, Modern Law of Partnership, § 985.

That there was no modification of the contract authorizing these charges appears from the following testimony of Mr. Murphy, the president of the defendant corporation:

"Q. What was the agreement, if any, concerning those expenses? A. We did not come to any agreement on the expense. Q. What was said in the discussion concerning those expenses of the Portland office? A. My recollection of the discussion was, that we were to go along and take care of the proposition; Elliott was to go down and run the camp; that is all there was to it."

8. A part of the expenses paid by defendant to its office employees was paid for bookkeeping. Defendant contends that it is entitled to charge for this service what it would be reasonably worth to keep a set of books involving the number of transactions it had with plaintiff; it kept no separate account of any of these transactions.

Under its contract, defendant was required to pay the expenses incident to the operation of the joint enterprise, including the purchase price of the equipment. It was also contemplated by the contract that the defendant should sell the logs and collect the proceeds. The amounts thus paid and received, unless disclosed, would be exclusively within the knowledge of defendant. The nature and character of the business required that the accounts of the business should be kept, and it is a necessary implication from the contract that defendant should keep them. It was, therefore, the duty of the defendant not only to keep the accounts, but to so keep them that they could be used as a basis for a settlement with plaintiff. If defendant had so kept the accounts, the expense

thereof would have been a proper charge, if this was not one of the services which it was required to perform without compensation. Instead of keeping these accounts in a separate set of books, or in its own books separately from other accounts, it kept them as an integral part of its own business, and as if plaintiff had no interest in them. They were so intermingled with defendant's other accounts that it is now very difficult for anyone to make a true statement of the account between plaintiff and defendant. The moneys received from this enterprise were not deposited separately, but were deposited with defendant's other moneys, and these moneys together with defendant's other moneys, were paid out indiscriminately upon all of defendant's various business enterprises.

There are other objections to the manner in which this account was kept, concerning which Mr. Vaughan, the secretary of the corporation, testified: "You want to bear in mind, that the way I had kept my books, I had depreciated the account each year, for the benefit of the income tax department, as I had depreciated our other operations. Q. And if he (Elliott) had examined the books as you had them then prepared, he would have got the information that is contained in that first statement? A. He would have found the same information as I prepared on that statement. Q. And you may state whether that information is correct or not. A. Well it is correct as I kept it on my books." For these reasons, there is no way by which it can be ascertained what sum defendant actually paid for keeping these accounts, and therefore the entire item must be disallowed.

After a careful consideration of all of the evidence, we find that the defendant received in all the sum of $441,917.68, and that it expended under the contract the sum of $438,963.23, and that this last amount includes the amount which plaintiff received in excess of the amount due him for salary under the contract. This sum of $2,285.54 must, therefore, be deducted from the total expenses stated above, which leaves $436,677.69, which would have been the total expenditure if plaintiff had not overdrawn his account. Deducting this last sum from the amount received by defendant, leaves $5,239.47, which was the net profits of the enterprise.

Plaintiff, therefore, became the owner of a one-third interest in the equipment, the total cost of which was $43,771.67, as found by the trial court. Defendant took possession of the equipment, and converted the same to its own use, upon the termination of this enterprise. The evidence shows that when this equipment was purchased, it was partly new and partly old, and that a part of it when used wears out quickly, and has to be renewed from time to time. The evidence also shows, that when used, the value of a part of the equipment depreciates quite rapidly. How much the depreciation amounted to is not clear from the evidence, but there is some evidence from which a reasonable approximation can be made, and from this evidence we conclude that upon the termination of the contract, the equipment when converted by defendant was reasonably worth the sum of $24,000.

The result of our conclusions is, that plaintiff is entitled to a decree of one fourth of the amount of the net profits, plus one third of the value of the

equipment, less the sum of $2,285.54, which he has already received.

The decree of the lower court will, therefore, be reversed and a decree will be entered in favor of plaintiff and against defendant for the sum of $7,-024.32, and for the costs and disbursements in both courts.                REVERSED AND DECREE ENTERED.

BEAN, BROWN and BELT, JJ., concur.