Zimmerman, J.
Since the agreement of June 28, 1943, signed by plaintiff and the two defendants in the presence of two attesting witnesses and acknowledged before a notary public, is the controlling factor in this case, the same is quoted in full as follows:
“This agreement entered into at Akron, Ohio, this . twenty-eighth day of June, 1943, by and between Grail Heath, Robert Heath, and Paul Baccelieri, all of Akron, Ohio, witnesseth:
“Whereas, Grail Heath is the owner of record of two places of business in Summit county, Ohio, one located at 103 South Main street, Akron, Ohio, and the other at 2100 Front street, Cuyahoga Falls, Ohio, and operated under the trade name of ‘Kippy, ’ said businesses are operated as restaurants and sandwich shops, and,
“Whereas, Robert Heath, and Paul Baccelieri, have *484 devoted their entire time and skill to the promotion of the business since its inception or approximately five years, more or less, and,
“Whereas, it is recognized by all the parties to this agreement that the two places of business have succeeded and prospered by reason of the joint efforts of all of the parties to this agreement, and,
“Whereas, the said Gail Heath, in recognition of the fact that said business has prospered thru the joint efforts of all the parties to this agreement, and desiring to reward said Robert Heath and Paul Baccelieri, for said efforts, said parties do enter into this agreement.
“Now, therefore, in consideration of the said Robert Heath and Paul Baccelieri continuing to render the same services in the promotion of the business that has been done in the past, it is agreed as follows:
“1. Said Gail Heath does hereby agree not to sell either one or both of said stores without first having obtained the consent of Robert Heath and Paul Baccelieri, and it is agreed that in the event it becomes necessary for financial reasons, or otherwise, to sell said places of business and by agreement of all the parties to this agreement the same is done, then, in that event said Gail Heath does hereby agree to give to Robert Heath and Paul Baccelieri and to each of them a third of the proceeds derived from the sale after payment of all encumbrances on the business.
“2. It is agreed that. Gail Heath shall continue to operate as the owner of record of said places of business, and that she is to remain the directing head and manager, and shall decide all policies for said business.
“3. It is agreed that Robert Heath and Paul Baccelieri shall receive as compensation for their services a weekly drawing account to be determined between the parties and to be an amount consistent with the volume of business and profits derived therefrom.
*485 “4. It is further agreed that Gail Heath will give an accounting every six months to Robert Heath and Paul Baccelieri concerning the affairs of said business and at which time the said Gail Heath will divide equally with Robert-Heath and Paul Baccelieri any profits derived from the business.
“It is agreed that said division of profits shall be made at least every six months, or sooner if there has been accumulated an excess of money in the bank.
“It is agreed that said Gail Heath shall do all the banking in her own name.
“It is agreed that Gail Heath will keep proper books of account and cause to be entered a complete statement of all transactions of the business. All books of account and all contracts belonging to the business shall be open and subject to the examination of Robert Heath and Paul Baccelieri.
“It is agreed further that in the event that either Robert Heath or Paul Baccelieri are inducted in the armed services or are conscripted by the government for any purpose whatsoever so that they will be unable to devote any part of their time in the promotion of said business, in this event said Gail Heath agrees to continue paying each of them a salary and will continue to divide the profits of the business as herein above specified.
“The said Gail Heath further agrees to execute a partnership agreement with Robert 'Heath and Paul Baccelieri making each of them equal partners with her in said business when the war has been concluded or when Robert Heath and Paul Baccelieri have been released from military service or conscription of any nature by the government, whichever may terminate first.
“And, it is agreed that at the time the said partnership agreement shall be entered into, that Robert Heath and Paul Baccelieri will not be required to pay *486 anything for said interest, it being considered that the services rendered and to be rendered in the promotion of the business will be sufficient consideration for obtaining said interest.
“It is agreed also that when and if said partnership is entered into that it is the intention of the parties that the business shall carry on if at all possible and that each one of said partners become disgruntled for any reason, and desires to sell his share thereof, he must first give an opportunity to the remaining partners to buy his share before any sale can be made to any outsider; and the value of any such share to be sold shall be appraised by an appraiser to be appointed by each of said parties at that time and the value so determined shall be the value of the interest of said partner. ’ ’
At least one member of this court entertains the view that the quoted agreement created a partnership among the signers. Be that as it may, it is obvious that by the instrument involved plaintiff was accorded a substantial interest in the restaurant business. In the event such business is sold, plaintiff is entitled to receive a third of the net proceeds of the sale. Furthermore, plaintiff was granted a weekly drawing account and at the end of each six-month period, or sooner if conditions warrant, is entitled to a third of any profits derived from the conduct of the business. In short, under the terms of the agreement a profit-sharing relationship was established whereby plaintiff can demand an accounting to ascertain whether there are any profits and, if so, a determination of the amount of such profits.
Pertinent to the instant case is the language of the opinion in Coward v. Clanton, 122 Cal., 451, 453, 55 P., 147, 148, where the following statement is made:
“The fact that the relation is wrongly averred to be that of partners is not material. If a case is stated *487 which, entitles the plaintiff to relief, it matters not that the contract which is correctly set ont is wrongly called a contract of partnership. I do not understand the suggestion that the court has no jurisdiction to compel an accounting unless a partnership was created. If plaintiff has a cause of action of which the court has jurisdiction, and it is necessary to have an accounting to determine his rights, it will be done. (San Pedro etc. Co. v. Reynolds, 121 Cal., 74.) Whether the facts would have given jurisdiction to a court of equity is of no consequence. We have no such courts, but our courts afford the remedies to which the facts may show the parties are entitled, whether legal or equitable.”
Such statement is in accord with the practice prevailing in Ohio, where under the Code of Civil Procedure (Section 11238, General Code) there is but one form of action, denoted a civil action. The same court exercises jurisdiction in equity as well as at law, and equitable or legal relief, or both, may be administered in any case where the matter pleaded and the facts developed call for such relief.
In the case of Davenport v. Widow and Heirs at Law of Sovil, 6 Ohio St., 459, 462, this court said that, where in .an action the petition contains a prayer for alternative and general relief, a court having jurisdiction of the subject matter is “restricted to no particular mode or measure of relief, but will be entirely at liberty to adapt either to what may be demanded by the particular circumstances of the case, as they may be developed.”
The case of Elliott v. Murphy Timber Co., 117 Ore., 387, 393, 244 P., 91, 92, 48 A. L. R., 1043, 1046, involved an action for an accounting. Plaintiff contended that under the contract in issue he and the defendant were joint adventurers and that the rules governing partnership cases applied. Defendant insisted that the re *488 lationship between the parties was that of employer and employee and that the rules applicable to an accounting between partners had no place in the action. In disposing of the question the court said in its opinion:
“Whatever their relation may have been, their rights and liabilities rest upon their agreement, and where a contract provides as this does, for payment by one party to another of profits received, it is the duty of the one receiving such profits to account to the other, for otherwise there would be no way by which such party could determine whether there were any profits. The duty to account arises whenever one party is in possession of profits to which another person is entitled to share, regardless of what their relationship may have been at the time the profits were earned. When an employer has received profits in which, by the terms of his contract, an employee is entitled to share, it is as much his duty to account to the employee as it would be if the relation of partners or joint adventurers existed between them.”
Compare Nelson v. Abraham (Cal. App.), 167 P. (2d), 801, affirmed 29 Cal. (2d), 745, 177 P. (2d), 931.
We are not now concerned with what may develop on the trial of this action, but we are of the opinion that the trial court was in error in summarily dismissing plaintiff’s petition and in rendering judgment against him, and that the Court of Appeals erred in affirming such judgment. Therefore, the judgment of the Court of Appeals is reversed and the cause is remanded to the trial court for further proceedings.

Judgment reversed.

Weygandt, C. J., Middleton, Taft, Matthias, Hast and Stewart, JJ., concur.