[Civ. No. 19042.   Second Dist., Div. One.   Feb. 16, 1953.]

SINGER METALS, INC. (a Corporation) et al., Respondents, v. INDUSTRIAL MANAGEMENT CORPORATION (a Corporation), Appellant.

Dryer, Stephens & Lagerlof, Stanley C. Lagerlof and H. Melvin Swift, Jr., for Appellant.

Ralph B. Herzog and Benjamin D. Mathon for Respondents.

PATROSSO, J. pro tem.—This is an action for an accounting arising out of a joint venture between the parties. From a judgment in favor of the plaintiff in the sum of $23,384.56 defendant appeals.

On March 6, 1947, respondents, having previously purchased a large quantity of insecticide bombs from the United States government, entered into a written joint venture agreement with the appellant for the sale and disposition thereof. After providing that appellant should pay respondents one-half the cost of such bombs, the agreement which is in the form of a letter addressed by respondents to appellant, insofar as material here, reads as follows:

"4. You (appellant) are to take delivery of all bombs from the Government, and upon the receiving of said bombs, you are to recondition the same to such extent as in your opinion seems necessary in order to make them saleable, which reconditioning may include painting, labeling, and substitution of the release mechanism, and such other items as you deem necessary, the total cost of which reconditioning you estimate should not exceed 20¢ per unit. Out of the gross receipts from the sales of said bombs, you are first to be reimbursed for your entire costs expended for the purposes set forth in this numbered paragraph.

"5. You are also to have full charge of selling, billing, warehousing, shipping and general handling of said bombs, and out of the gross receipts from sales of said bombs you are next to be reimbursed for such services and expenses at cost. In this connection the matter of sales price, terms and conditions,

and territories in which sales shall be made shall be left entirely in your discretion."

At the time of the execution of the agreement appellant was engaged in various diverse activities and business operations which it conducted through three wholly owned corporate subsidiaries and two operating divisions. The corporate subsidiaries were Roadmaster Products Company which was engaged in the assembly and sale of power brake and butane equipment for trucks; Gross, Rogers and Company, which was engaged in a securities, investment and financing business; and the Tetco Company, which held title to certain patents from which it received rents and royalties. The two divisions were Tetco Division, which was engaged in the business of assembling and selling small fire extinguishers, and Insecticide Division, which was engaged in selling an aerosol bomb similar to that of the joint venture. Appellant at the time of the execution of the agreement had ceased manufacturing its own bomb and was engaged in disposing of its accumulated inventory. However, it was doing and continuing to do some considerable development work on new aerosol products at its plant in Valparaiso, Indiana, which it intended to and did market following the completion of the venture.

Following the execution of the agreement between the parties, appellant took possession of the bombs, proceeded to recondition and prepare the same for sale and to market them. Books of account reflecting the venture's activities were kept by and were at all times within the possession and under the control of the appellant. In these were entered all receipts of the venture and all direct costs incurred in the reconditioning and sale of the bombs such as advertising, freight, personal property taxes, liability insurance, storage of the bombs, and salaries and wages of personnel whose services were rendered exclusively to the venture. Until March, 1948, no charges were entered in the books of the venture reflecting any portion of the general administrative overhead of the appellant. On or about that time, however, there was caused to be entered upon the books of the venture a charge on account of such general administrative overhead for each of the months from and after March, 1947, in the amount representing the difference between appellant's total general administrative overhead for the month and the sum of $4,500. This sum of $4,500, which was less than appellant's total monthly overhead, represented the aggregate amount which appellant had prior to the execution of the joint venture

agreement customarily allocated to all of its subsidiaries and divisions and included the sum of $1,500 per month allocated to its insecticide division.

Although delayed in transmission, from the beginning of the venture appellant rendered monthly statements of its operations of the venture to respondents. In none of these, prior to the statement for the month of March, 1948, which was not received by the respondents until the following June, did there appear any charge for appellant's overhead. On this last-mentioned statement, however, there appeared a notation to the effect that it did not "reflect or include general and administrative expenses of $19,500.00 due Industrial Management Corporation at the rate of $1,500.00 per month from March 1, 1947." Promptly upon receipt of this statement, respondents made protest that the charge was improper and unauthorized. However, a charge therefor continued to be entered upon the books of the venture by the appellant for each of the succeeding months, not for the sum of $1,500 per month, but in varying amounts representing the difference between appellant's total overhead for the month and the sum of $4,500, as previously stated, until the close of the venture at which time the charges so made aggregated the sum of $56,138.99. The propriety of this charge is the sole question presented here.

Upon the trial respondents contended (a) that under the terms of the venture agreement appellant was not entitled to charge against the venture any portion of its general overhead and administrative expense, and (b) that if so entitled the charge made therefor by appellant was excessive and unreasonable. Both of these contentions were controverted by appellant. However, inasmuch as the trial court so found, and plaintiff has not appealed from the judgment, we shall assume without deciding that under the terms of the venture-agreement appellant was entitled to charge as part of its "cost" the portion of its general overhead and administrative expense properly applicable to the venture. (As to this, however, see: *Elliott* v. *Murphy Timber Co.*, 117 Ore. 387 [244 P. 91, 48 A.L.R. 1043, 1047]; *Zech* v. *Bell*, 94 Wash. 344 [162 P. 363, 365]; 33 C.J. 864; 48 C.J.S. 846; *McDermott* v. *Rossney Contracting Corp.*, 131 Misc. 759 [228 N.Y.S. 1], modified on other grounds, 225 App.Div. 784 [232 N.Y.S. 804]; and compare *Meyers* v. *Texas Co.*, 6 Cal.2d 610, 619 [59 P.2d 132]; *Vernon Metal & Produce Co.* v. *Joseph, Joseph & Bros. Co.*, 241 N.Y. 544 [150 N.E. 547, 548], modified 212 App.Div. 358 [209 N.Y.S. 6].)

The trial court found that a reasonable amount to be allowed appellant on account of this item was the sum of $27,000 instead of the sum of $56,138.11 claimed by it. Appellant's complaint with respect thereto is twofold: (1) That the court thereby, in effect, undertook to rewrite the contract of the parties by limiting appellant's right to recover overhead to a *reasonable amount* rather than the *cost* thereof to appellant, and (2) that the finding that the sum allowed was reasonable is unsupported by the evidence.

Appellant throughout its brief asserts that ''cost means cost'' and that it was entitled to be reimbursed for the cost to it of its general overhead and administrative · expense applicable to the venture whether the same was reasonable or unreasonable. While not prepared to accept this contention to its full extent, and although, contrary to the assumption of counsel, the word ''cost'' is one of equivocal and variable meaning (*Meyers* v. *Texas Co., supra;* 20 C.J.S. 241), we may assume for the purposes of the present discussion that by ''cost'' was meant actual cost, in the sense of the amount expended for the items falling within the designation of overhead rather than the reasonable value thereof, and hence if appellant produced proof which compels the conclusion that, in the operation of the venture, it incurred overhead in a determinable amount in excess of that allowed by the trial court, the judgment must be reversed. ■ However, before undertaking to review the evidence with this objective in view, it is pertinent to observe that the burden rested upon appellant to establish by competent evidence (1) that such overhead was incurred in the operation of the venture, and (2) the cost thereof. (*Vernon Metal & Produce Co.* v. *Joseph, Joseph & Bros. Co., supra,* 150 N.E. 547, 548; *Zech* v. *Bell, supra,* 162 P. 363, 365.)

It may be noted at the outset that the expert accountant who testified upon behalf of appellant admitted that the *method* (previously described) employed by appellant in allocating to the venture overhead in the claimed sum of $56,138.11 was erroneous and unjustified, although appellant contends that, by using a proper method, an amount as great or greater than this is warranted.

It should also perhaps be pointed out here that the items included within the designation of general and administrative overhead, totaling $218,344.84 were the following: the salaries of appellant's executive officers and other employees, both in Los Angeles and Valparaiso, who devoted a portion,

but not all, of their time to the venture aggregating the sum of $104,859.10, legal and auditing, office supplies and expenses, postage, telephone and telegraph, taxes, licenses, rents, auto and travel, light and power, directors' fees and expenses, dues and subscriptions, donations and depreciation.

The undisputed testimony is to the effect that no additional employees were engaged by the appellant in connection with the operation of the venture other than those whose compensation was charged directly to the venture, and whose salaries and wages therefore are not reflected in appellant's overhead. No attempt was made upon the trial by the appellant to identify any specific sum for any particular item included in the total overhead as having been incurred directly for or in the prosecution of the business of the venture. The evidence produced by the appellant in support of its claim falls into two categories: (1) testimony by certain of its officers wherein they undertook to estimate, in terms of percentages, the proportion of the total time of themselves and their assistants which was devoted to the business of the venture, and (2) testimony of an expert accountant as to various methods or formulae which he considered "acceptable" or "proper" to be used in computing the amount of appellant's total overhead chargeable to the venture.

As to the first, no records were kept by the appellant as to the amount of time devoted by any of its executives or other employees whose compensation was not charged directly to the venture in the prosecution of the business of the venture either before or after the controversy arose in June, 1948 (the venture did not terminate until a year later) as to appellant's right to make a charge therefor. In view of this as well as of the diversity and dissimilar character of the operations conducted by appellant through its various subsidiaries and divisions, the trial court was not obliged to (and as indicated by the trial judge's opinion, it did not) accept the testimony given by appellant's witnesses in this regard.

As to the items other than salaries, likewise no records were kept with the view of distinguishing between those incurred for the venture from such as were incurred in connection with appellant's other activities. No reason appears why, if proper records had been kept by the appellant, it would have been particularly difficult to ascertain with reasonable accuracy the amount of each of these items incurred in the prosecution of the venture's business. For example, it would have been relatively easy to keep an account of the cost of

postage, telegrams, taxes and licenses, insurance, travel, sub-scriptions. and donations incurred on behalf of the venture. Indeed, even without such entries the expert accountant who testified upon behalf of the appellant stated that it would be possible by examining invoices and other evidence in the possession of the appellant, to ascertain with some degree of accuracy the amount properly chargeable to the venture for many of these items. The only excuse assigned for not doing so is that this would take time and involve expense. This, however, is an insufficient reason for appellant's failure to supply this available proof. If, as it so strenuously insists, appellant was entitled to reimbursement for the "cost" of overhead attributable to the venture, the burden rested upon it to establish the actual cost thereof, not merely the estimated or theoretical cost. A somewhat similar problem was presented in *Zech* v. *Bell, supra* (162 P. 363, 365), where the court said: "The evidence in fact is, as shown by the record, that the overhead expense varies and appellants kept no account of what particular expenses, which are commonly included in and designated as overhead expenses, occurred in the carrying on of this particular contract. If appellants should now be per-mitted to charge against this joint venture a proportionate share of such expenses in doing their entire general business, they could charge respondent with much more than his pro-portionate share on this particular transaction. (*Bane* v. *Dow,* 80 Wash. 631 [142 P. 23].)

"Manifestly they should have shown exactly what that proportionate share was, or the particular items of business expense, which entered into and became a part of this par-ticular contract. (30 Cyc. 742.) This they failed to do."

Nor was the other evidence adduced by appellant in support of its claim any more satisfactory or convincing. As previously indicated, this consisted of the testimony of an expert account-ant as to various methods or formulae which he considered might properly be resorted to in determining the proportion of appellant's total general and administrative overhead properly chargeable to the venture. He testified to six different such methods with variations of three of them. Without under-taking to discuss each in detail it may be said generally that (to mention but three) the results obtained were derived from the application to the total amount of appellant's over-head of the percentage that the total income of the venture bore to that of appellant's insecticide division or to the total income of appellant from all its various operations or a

variation which involved charging the venture with the same percentage of the total salaries of the appellant's officers and other employees as that which the appellant's witnesses testified these officers and employees devoted of their entire time to the venture, plus a charge in a sum representing the percentage of appellant's total overhead minus salaries that the total of the receipts of the venture bore to appellant's total gross receipts from all sources. Although this witness testified that each of the methods was "proper" or "acceptable," the result varied more than $23,000 between the highest and lowest figure derived by the application of the several methods. Moreover, the witness testified that each of these had its "advantages and disadvantages" and that there were "a million variations of each."

We shall not attempt to analyze these various so-called methods in detail other than to observe that they all rest upon certain assumptions more or less arbitrary, e.g., that given the total amount of the general and administrative overhead of an organization engaged in various and diverse activities the portion thereof incurred in the prosecution of a particular activity conducted by it and another as a joint venture may be accurately determined in every instance by applying the percentage which the income produced by the latter bears to the total income derived from all such activities or a portion thereof. Neither our judicial knowledge nor the evidence compels the conclusion that this assumption is necessarily true. Certain it is that the result derived thereby does not establish with any great degree of certainty the actual cost of the overhead incurred by or for the venture, which appellant insists was the precise issue which the trial court was called upon to determine, and which, as previously noted, it had the burden of proving.

Under the circumstances here the trial court in reaching its decision was confronted with two alternatives: It might either conclude that the appellant, having failed to establish by convincing evidence the cost of the overhead incurred by appellant in the business of the venture, did not sustain the burden resting upon it, and hence was not entitled to any credit therefor, or, as it did, undertake to fix a sum on account therefor which appeared reasonable in the light of all of the evidence. In adopting the latter course, the trial court is not subject to the charge leveled against it that thereby it departed from the terms of the contract by awarding overhead in a reasonable amount rather than the

cost thereof to appellant. It was merely a means of arriving at the amount to be allowed appellant for overhead incurred by it for the venture in a situation where the evidence failed to establish the cost thereof with reasonable certainty.

While it is true, as suggested by counsel for appellant, that the court might not abdicate its duty of determining cost because of the difficulty involved in the ascertainment thereof, it is equally true that the difficulty of making satisfactory proof of such cost by the appellant did not relieve it from the burden of establishing the same in a definite sum with reasonable certainty. If the appellant has been denied recovery of some portion of its general overhead properly chargeable to the venture, it is only because of its failure to keep proper records by which the cost thereof could be determined, as was its duty to do. Occupying a fiduciary relation to the respondents, and, inasmuch as every cent of its overhead charged to the venture would inure to its own advantage, the trial court was warranted in carefully scrutinizing the claim for the large amount sought to be charged therefor against the venture, particularly when, in the first instance, it advised respondent of its intention to make a charge in an arbitrary sum ($1,500 per month), and subsequently demanded an amount which was arrived at by what counsel for appellant themselves are forced to admit was a "rough and ready" method. We believe that the methods suggested by the expert who testified on behalf of the appellant may also be said to be "rough and ready" when offered as proof of cost of overhead. At least it cannot be said that they established the cost of the overhead incurred in the operation of the venture with such a degree of certainty that the trial judge was bound to resort to any one of them in arriving at the amount which appellant was entitled to recover therefor.

From what has been said we do not desire to be understood as accepting the premise upon which appellant's argument largely rests, namely, that "cost" is a word of such definite and certain meaning that, as used in the agreement here, it is necessarily to be construed as excluding, in determining the cost of overhead properly chargeable to respondent, any consideration of the reasonableness of the amount thereof. As indicated in an earlier portion of this opinion, the word is one of variable meaning "capable of a larger or narrower construction according to the subject matter and the circumstances of the particular case. It is

sometimes used to express the value of a thing and sometimes the price paid for it.'' (14 A.C.J. 1433; and see 20 C.J.S. 241.) Indeed, it has been said: ''Even in the simpler application to mere bargain and sale of a thing already in existence, and not to be manufactured, the term ('cost') is ambiguous, and so much so that it is not impossible that often it will be found to avoid the contract for incurable uncertainty . . .'' (*Hazleton Tripod-Boiler Co.* v. *Citizens' St. Ry. Co.*, 72 F. 317, 321). Here, there is no evidence other than that afforded by a reading of the agreement itself as to the sense in which the parties understood and used the term. If it were to be conceded therefore, as appellant contends, that the trial court construed the same as comprehending a charge for overhead in a reasonable amount having regard to all circumstances of the case, we would not undertake to disturb its conclusion.

We therefore conclude that the finding of the trial court that $27,000 was a proper amount to be allowed appellant on account of overhead is supported by the evidence.

█ Appellant also complains of the action of the trial court in overruling its objection to the question propounded to the respondents' witness, Lobe (treasurer of Singer Metals), as to whether in his opinion the general and administrative overhead expense sought to be charged to the joint venture by the appellant was proper. Conceding that the ruling was erroneous, we do not believe that the error was prejudicial. The cause was tried without a jury and it is reasonably apparent that the witness' expressed opinion that the charge was improper did not influence the final decision of the trial court. The cost of overhead was not a mere matter of opinion. It was the precise fact in issue which it was for the court to determine. Moreover, as previously noted, the appellant's own witness, Mr. Hubbs, stated that the method pursued by appellant in allocating a portion of its administrative overhead to the venture was improper. While counsel for appellant undertake to distinguish between testimony as to method and result, asserting that the former is admissible but the latter is not, if it be conceded that it is permissible for a witness to testify that the method employed in reaching a given result is erroneous or improper we find it difficult to conclude that it is inadmissible for a witness to testify that the result so obtained is erroneous or improper.

After the witness Lobe had testified, in effect, that, in undertaking to determine the amount of the general and administrative overhead chargeable to the venture, he would

use as a base the figure of $1,500 per month which the appellant, prior to the venture, had charged to its own insecticide division on account thereof, counsel for respondents propounded the following question to him: ''And what portion would you have charged as a reasonable proportion which would have been in keeping with sound accounting practices? What portion of the $1,500.00, if you can so state?''

■ Objection was made by counsel for appellant ''to any statement as to what he would have done.'' The objection was overruled and the witness answered that he would allocate one-half of this sum or $750 to the venture. Appellant then moved to strike the answer without assigning any ground therefor, and the motion was denied. Appellant assigns these rulings as error. While the question was duplicitous and objectionable as calling for an answer as to what the witness himself would have done rather than what would have been in accordance with sound accounting practice, after the witness had answered as previously indicated he was asked if the conclusion expressed by him was ''in accordance with sound accounting practice'' to which he replied in the affirmative. This had the effect of curing any error in the previous ruling, assuming, as do counsel, that expert testimony of this character was otherwise admissible to establish the fact in issue. ■■ In its brief, however, appellant contends that the rulings in question were erroneous for a different reason, namely, that the witness did not have sufficient information concerning the operation of the venture and the business of the appellant generally to express an opinion. Aside from the fact that this was not assigned as a ground of the objection or the motion to strike in the trial court and hence might be considered as having been waived, the lack of information possessed by the witness went rather to the weight of his testimony than to its admissibility. While we perceive no error in the court's ruling, if it were to be considered otherwise, it was not prejudicial.

Upon examination of the entire record we are satisfied that the case was fairly tried and received careful consideration at the hands of the trial judge who was confronted with a most difficult problem in the solution of which but little assistance was afforded by the evidence introduced upon behalf of the appellant. Despite this he undertook to, and we believe did, reach an equitable and just result.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.