Submitted on briefs December 4, 1918, affirmed February 11, 1919.

## WHEELOCK *v.* RICHARDSON.

### (178 Pac. 377.)

**Appeal and Error—Findings of Court—Conclusiveness.**

1. The findings of the court below stand as the verdict of a jury and are conclusive upon Supreme Court, if there was any evidence to sustain them.

**Attorney and Client—Action for Professional Services.**

2. In action by attorneys for professional services, *held,* there was ample evidence to sustain verdict for plaintiffs in the District Court and findings of judge in the Circuit Court in favor of plaintiffs.

**Attorney and Client — Recovery of Compensation — Pleading — Variance.**

3. Where attorneys in their complaint did not rely specifically upon original contract to pay $100 for professional services, but upon general allegation that they, performed services between two dates at the agreed price of $100, it was unnecessary in order to sustain

complaint that the price should have been agreed upon beforehand for the services actually rendered or that the entire $100 should be agreed upon at one time.

**Attorney and Client — Recovery of Compensation — Pleading — Variance.**

4. In action by attorneys for $50 alleged to be due for professional services, if the original contract was to pay $100 for certain specific services, and afterward that contract was modified, so that a part of the services were waived, and defendant still agreed to pay the $100 for services already performed, that would be sufficient to sustain allegations of the complaint.

**Attorney and Client — Recovery of Compensation — Pleading — Variance.**

5. In action in which attorneys alleged that they rendered professional services to defendant at agreed price of $100, that only $50 had been paid, and that there was still due $50, there would be no fatal variance because at the time of the final modification $50 had already been paid on the services and the defendant agreed to pay $50 additional.

[As to what is a reasonable attorney's fee in the absence of contract, see note in **Ann. Cas. 1916B, 263.**]

From Multnomah: GEORGE N. DAVIS, Judge.

In Banc.

This is an action originally brought in the District Court for Multnomah County, to recover the sum of $50 alleged to have been due from the defendant to the plaintiffs for professional services, the plaintiffs being a firm of lawyers engaged in the practice of law in Multnomah County. They allege that between August 10, 1915, and March 1, 1916, they rendered professional services to the defendant at the agreed price of $100; that only $50 has been paid thereon, and that there is $50 still due from defendant to plaintiffs.

There was a jury trial in the District Court and a verdict for plaintiffs. Afterward the case was appealed by the defendant to the Circuit Court for Multnomah County. There was a trial by stipulation before the judge without a jury, and again there were findings

for the plaintiffs. The defendant appealed to this court, it being urged there was no evidence to sustain the allegations of the complaint and the findings of the court.                                    AFFIRMED.

For appellant there was a brief submitted over the names of *Mr. John J. Fitzgerald, Mr. Sam M. Johnson* and *Mr. John P. Hannon.*

For respondents there was a brief prepared and submitted over the names of *Messrs. Littlefield & Maguire* and *Mr. Elton Watkins.*

BENNETT, J.—1. Of course it is too well settled in this state to admit of question that the findings of the court below stand as the verdict of a jury and are conclusive upon this court, if there was any evidence to sustain them. It. follows, that where there was conflicting evidence, we must follow the case as made by the plaintiffs wherever there was any evidence to sustain it.

The evidence disclosed by the record is substantially as follows: At about the time alleged in the complaint, plaintiffs were employed by the defendant to conduct a divorce suit in his behalf, and the evidence upon the part of plaintiffs tends to show that it was originally agreed they should receive $100 for their services in the suit, they to do whatever was necessary in carrying the case to its final determination. Under this agreement plaintiffs examined into the case and interviewed all the prospective witnesses, and finally drew an answer to the complaint against the defendant in the divorce proceedings, and also a cross-bill, which was filed in the case. Subsequently,

there were some continued negotiations for settlement, all of which were conducted by the plaintiffs. These negotiations finally failed and the adverse attorneys filed a motion for suit money, which was presented on behalf of the defendant by the plaintiffs herein, and the court allowed the plaintiff in the divorce suit $50.

When this result was reported by the plaintiffs to the defendant herein, he grew very angry and considerable harsh, bitter and abusive language passed between him and the plaintiffs, and he finally demanded his papers, discharged the plaintiffs and left the office. Prior to this time defendant had paid $50 on the $100 agreed upon.

At the time defendant discharged plaintiffs, according to the evidence of plaintiffs, he asked, "How much do I owe you?" to which one of plaintiffs answered, "You owe me $50." Defendant said, "I will pay you the $50." After about an hour defendant returned and apologized to the plaintiffs for what he had said. The testimony on behalf of plaintiffs at this time tends to show that defendant reiterated the promise to pay the additional $50, and that there was considerable talk about it. Defendant spoke about some other papers which plaintiffs still had in their safe and they offered them to defendant, but he said, "No, he would leave them there for safety."

A short time thereafter and on the day of the trial of defendant's cause, he came to plaintiffs' office and told the plaintiffs:

"We want you at 2 o'clock * * Doctor Jefferson is going on the stand at 2 o'clock to testify. I want you there in the case, to sit there with Fitzgerald in the case and to testify."

One of the plaintiffs did go up and sit with Fitzgerald during the trial conferring with him about the case, and afterward went on the stand as a witness and testified for defendant. Subsequently, according to the evidence of plaintiffs, defendant again reiterated his promise to pay the additional $50, but finally changed his mind and refused to pay.

2. We think there was ample evidence to sustain the verdict of the jury in the District Court, and the findings of the judge in the Circuit Court.

It will be noticed the plaintiffs, in their complaint, do not rely specifically upon the original contract to pay $100 for specific services then agreed upon, but rather upon the general allegation, that they "performed services" between two dates "at the agreed price of $100."

3–5. It is thought it was not necessary, in order to sustain this complaint, that the price should have been agreed upon beforehand for the services actually rendered, or that the entire $100 should be agreed upon at one time. If the original contract was to pay $100 for certain specific services, and afterward that contract was modified, so that a part of these services were waived and the defendant still agreed to pay the $100 for the services already performed, that would be sufficient to sustain the allegations of the complaint. Neither would it be a fatal variance because at the time of the final modification, $50 had already been paid on the services, and the defendant agreed to pay $50 additional. The plaintiffs could rely, under the general allegations of their complaint, upon the modified contract and treat the arrangement as one transaction by which the defendant agreed to pay $100 for the services which had actually been per-

formed up to the time of plaintiffs' discharge from the case.

This disposes of each and all of defendant's assignments of error.          JUDGMENT AFFIRMED.