Argued February 1, affirmed March 8,* rehearing denied April 5, 1927.

## ATTLA M. LEE v. ELI N. ELLIS.

(253 Pac. 873.)

**Appeal and Error—Court's Finding, Sustained by Competent Evidence in Law Case, cannot be Disturbed.**

1. On appeal in law case, court's finding for judgment cannot be disturbed, if sustained by competent evidence.

**Partnership—Evidence Held to Establish Partnership Between Defendants Sued for Money Advanced.**

2. In action for money advanced for construction of bridge evidence *held* to establish a partnership between defendants.

**Partnership—Specific Agreement to Share Losses is Unnecessary to Constitute Partnership.**

3. There need not be any specific agreement to share losses as well as profits, in order to constitute a partnership, where other elements are present.

**Joint Adventures—Joint Adventure is Limited Partnership as to Scope and Duration, Though not as to Liability.**

4. A joint adventure is a limited partnership, not in a statutory sense as to liability, but as to scope and duration.

**Partnership—Partner may Borrow Money and Bind Nontrading Partnership With Other Member's Consent, or Where Necessary to Carry on Business.**

5. One member of nontrading partnership may borrow money and bind partnership with other member's consent, or where absolutely necessary to carry on business.

**Partnership—Evidence Held to Warrant Finding That Money was Advanced to Nontrading Partnership With Both Members' Assent and was Necessary and Actually Used for Performance of Partnership Contract.**

6. In action for money advanced to bridge contractors, evidence *held* to warrant finding that money was furnished to partnership with full assent of both parties and was necessary and actually used for performance of contract, so as to bind both partners, as against contention that it was a nontrading partnership, neither member of which had power to bind other by incurring debt.

**Appeal and Error—Admission of Defendant's Letter Advising Surety Company That Codefendant Would be Partner in Contract Held not Injurious to Latter in Suit for Money Advanced.**

7. In action for money advanced to defendant bridge contractors, admission of letter from one of them, shortly after execution of

1.  See 2 R. C. L. 203.
3.  See 20 R. C. L. 826.
4.  See 15 R. C. L. 500.

formal contract with state highway commission, advising surety company that codefendant would be silent partner in contract, *held* not injurious to latter though letter was of doubtful value.

**Appeal and Error—Evidence of Conversation Between Plaintiff and Defendant Held not Prejudicial to Codefendant, in View of Plaintiff's and Defendant's Testimony.**

8. In action for money advanced to bridge contractors to carry on work, evidence of conversation of plaintiff and one defendant as to partnership between defendants *held* not prejudicial to codefendant, where *prima facie* partnership had already been made out by plaintiff's testimony, and defendant participating in conversation testified to substantially same effect.

**Partnership—Equities Between Partners Respecting Partnership Affairs cannot be Settled in Action Against Them for Money Advanced.**

9. Equities between defendant partners with reference to affairs of partnership cannot be settled, in action against them for money advanced.

---

Appeal and Error, 4 C. J., p. 844, n. 66, p. 877, n. 80, p. 879, n. 84, 89, p. 883, n. 33, p. 969, n. 56, p. 1000, n. 23.
Joint Adventures, 33 C. J., p. 842, n. 5.
Partnership, 30 Cyc., p. 380, n. 33, p. 415, n. 28, p. 591, n. 21.

From Multnomah: WALTER H. EVANS, Judge.

Department 1.

The complaint, which is brief, is as follows:

"That during all the times herein mentioned the above named defendants, Eli N. Ellis and W. H. Lee, were engaged in the joint venture and enterprise of constructing what is known as the Bear Creek bridge, in Clatsop County, Oregon, and near what is known as Svenson.

"That at the special instance and request of defendants and each of them and on behalf of said joint venture and enterprise, the above named plaintiff advanced to defendants and each of them, and for their benefit and use, at their special instance and request, between the 1st day of June, 1923, and the 17th day of January, 1924, the total sum of $3525.80, which said sum defendants and each of them agreed to repay to plaintiff on or before the time when said Bear Creek bridge was completed.

"That said Bear Creek bridge herein referred to was completed on or about December 24, 1923.

"That no part of the aforementioned indebtedness to-wit: $3525.80, has been paid except the sum of $1291.62, and there is now due and owing from defendants and each of them to plaintiff the sum of $2234.18, together with interest thereon from the 19th day of January, 1924, until paid."

The defendant Ellis denied each paragraph excepting an admission that plaintiff had received the sum of $1,291.62, and for a further and separate defense and counterclaim he set up that W. H. Lee entered into a contract with the Oregon Highway Commission for the construction of the Bear Creek bridge; that to enable him to proceed with the performance of the contract, Lee agreed with this defendant that he should from time to time loan to him the moneys necessary to prosecute the work thereon; that this defendant should from time to time for and on behalf of W. H. Lee pay out such sums of money as were needed for labor and material; that all moneys received from the State of Oregon in payment of the contract should be the property of the defendant Ellis; and that said money should be turned over to said defendant as soon as the same should be received from the State of Oregon to be applied to the payment of the loan and advances made by this defendant to and on behalf of the defendant Lee in payment of merchandise procured by the defendant Lee from this defendant. That between March 31, 1923, and January 31, 1924, defendant Ellis loaned to defendant W. H. Lee and paid out on his behalf the sum of $9,991.21, which was largely in excess of the entire amount that defendant Lee was to receive from the State of Oregon on the aforesaid contract.

That about June 23, 1923, W. H. Lee requested this defendant to apply to the plaintiff for the loan of additional money with which to carry on the work. That pursuant to said request, defendant applied to plaintiff and plaintiff loaned to defendant the sum of $600, and this defendant agreed with plaintiff that, if she would make such loan to the defendant W. H. Lee, he would consent to the payment of said sum out of the next payment of money obtained by the said W. H. Lee from the State of Oregon. That in accordance with this understanding, plaintiff advanced the sum of $600 on June 23, 1923, and on July 23, 1923, plaintiff advanced the sum of $200 upon the same understanding, that she was to be reimbursed out of the moneys to be received from the State of Oregon on the aforesaid contract. That said sum of $800 advanced by plaintiff to this defendant Ellis, as aforesaid, was made for the use and benefit of the defendant Lee to the knowledge of the plaintiff, and said money was in fact used in the payment of debts incurred by the said W. H. Lee in the prosecution of the work.

That thereafter on or about the eighteenth day of January, 1924, defendant Lee procured from the State of Oregon a payment of $1,291.62, on account of the aforesaid contract, which sum defendant Lee should have turned over to this defendant in accordance with the aforesaid agreement; but the said defendant Lee disregarded the aforesaid agreement and turned over the sum of $1,291.62 received from the State of Oregon to the plaintiff herein, and the plaintiff has ever since retained the same. That pursuant to this aforesaid agreement between the plaintiff and this defendant, the plaintiff could only retain out of the said payment of $1,291.62 the sum of $800 and

the balance of $491.62 was and is the property of the defendant, but the plaintiff has failed and refused to surrender this balance to the defendant, and there is now due from the plaintiff to this defendant the sum of $491.62, with interest thereon at the rate of 6 per cent per annum from the eighteenth day of January, 1924, and for which amount the defendant demands judgment against the plaintiff.

The new matter in the answer of defendant Ellis being denied by an appropriate reply, the case proceeded to trial. A jury being waived, the court found for the plaintiff in the sum prayed for in the complaint, from which judgment the defendant Ellis appeals.                                       AFFIRMED.

For appellant there was a brief over the names of *Mr. S. J. Bischoff* and *Messrs. Malarkey, Seabrook & Dibble,* with an oral argument by *Mr. Bischoff.*

For respondent there was a brief over the name of *Messrs. Wilbur, Beckett, Howell & Oppenheimer,* with an oral argument by *Mr. Eugene Oppenheimer.*

McBRIDE, J.—1. This case has been argued very much as if it were a trial *de novo* in this court, but being a law case, we must assume that, if the court's finding for a judgment is sustained by competent evidence, such finding cannot be disturbed here: *Astoria R. R. Co.* v. *Kern,* 44 Or. 538 (76 Pac. 14); *Seffert* v. *Northern Pac. Ry. Co.,* 49 Or. 95, 97 (88 Pac. 962); *Burton* v. *Lithic Mfg. Co.,* 73 Or. 605, 609 (144 Pac. 1149); *Gilbert* v. *Sharkey,* 80 Or. 323 (156 Pac. 789, 157 Pac. 146); *Wheelock* v. *Richardson,* 91 Or. 87 (178 Pac. 377); *Nibley* v. *Delahunt,* 105 Or. 46 (209 Pac. 473); *Bennett* v. *State Industrail Acc. Com.,* 113 Or. 627 (233 Pac. 537).

2. One of the first questions, therefore, is to ascertain whether there is any evidence to support the theory that there was a partnership between the defendant Ellis and the defendant W. H. Lee; and secondly, to inquire as to the scope of that partnership in the present case. It is not our privilege to go into a comparison of the relative weight of the testimony introduced, but simply to ascertain whether the plaintiff has introduced competent testimony to show the partnership. Defendant W. H. Lee, who filed an answer admitting all the allegations of the complaint, testified as to the facts leading up to the formation of the alleged partnership, from which it appeared that the first transaction between these parties was a mutual bid for work in paving streets in Rainier, which bid was submitted in the name of Ellis & Lee. They were not successful in obtaining the first contract, but in their next venture in street paving, which, for apparently sufficient reasons, was made in the name of Lee, who testified that "we were partners" in that undertaking, there was a profit of $1,000 on this job, which was equally divided between Lee and defendant Ellis. Thereafter, W. H. Lee began to consider the Bear Creek bridge contract and talked the matter over with Ellis, and they "discussed the conditions under which they were going into this business, into the partnership, into the business of the bridge." Later, they were successful in securing the work. Lee testified that the bid was made in his name for the reason that Ellis was engaged in a general merchandise business and thought it might be of some injury to his standing in that business if it appeared that he was engaged in outside contracting. Lee further testified that the arrangement was that they were to be partners and that Ellis said Bill's (W. H.

Lee's) part was to go on the job, but the headquarters would be at Rainier; that Ellis would keep the books, handle the money, meet the pay-rolls and that Lee was to handle the actual work and Ellis the office and that both were to advise with each other as to the manner and progress of the work, and that when Ellis was on the job, he was to look over the work, check over the items in the office, discuss the work and observe the manner in which the workmen were conducting themselves. The profits were to be equally divided. Mr. Ellis was on the job a number of times and was present at the place the bridge was to be constructed approximately every two weeks. On another occasion Ellis stayed on the job for three days and upon another, Ellis was not pleased with the progress of the work and when he (Lee) tried to explain to him the difficulties under which they were laboring, Ellis threatened to put somebody in Lee's place. Lee further testified that in April, 1923, the Highway Commission notified them that they had not secured the right of way in connection with the Bear Creek bridge, and they intended to change the channel of the creek, whereupon this matter was taken up with Ellis and he and Ellis decided that, if there was a change in the location, they were entitled to compensation for extra work. He also testified that he and Ellis went to the different sand and gravel companies in Portland, before the contract in question had been secured, and obtained prices for the material and made inquiries for the rental charges of certain equipment; that they owned some equipment together, which had been left over and not disturbed as the outgrowth of a street job in Rainier. He further testified that he and Ellis made a trip to Salem and consulted with the State Highway Commission

for the purpose of securing an adjustment on their contract for extra work by reason of the change of location. He also testified that, in connection with the loan represented by plaintiff's check for $550, Ellis had cognizance of the same, and that it was deposited to his account at the request of both himself and Ellis. It also appeared from his testimony, they had been advised by their attorney that said Highway Commission could not be sued by reason of extra work involved in the change of location. Lee also related a conversation in which he claims that Ellis wanted him to sign a paper denying the fact that they were partners.

Without further reciting the testimony, it is all to the effect that there was a partnership agreed upon between them with reference to this business. The testimony of the plaintiff was very direct as to the fact that both Ellis and Lee had stated to her that they were partners in relation to this bridge contract, and that she advanced no money except at the solicitation of both Ellis and W. H. Lee.

E. G. Ricketts, who was a resident engineer of the State Highway Commission, and who had the Bear Creek bridge job under his particular supervision, testified that he met Ellis at Bear Creek; that Mr. Ellis and Mrs. Lee, the plaintiff, were at the bridge site, and that Ellis introduced himself to the witness, saying: "I am Mr. Ellis, partner of Mr. Lee," and that he, Ellis and Mrs. Lee talked in a general way about the bridge proposition. On cross-examination he said he was absolutely sure that Ellis introduced himself as Mr. Lee's partner.

F. R. Wilson, a subcontractor, testified that he had a conversation with Ellis when he took the subcontract for the building of the forms of the bridge; that

he. and Lee signed the subcontract and that this witness asked whether Mr. Ellis was going to sign, and Ellis spoke up and said that it was not necessary as long as Lee's name only was mentioned in the general contract, although he Ellis was involved as a partner in the contract.

3. These and other circumstances all tend to show that Ellis was a partner. It is true, there was strong contradictory evidence, but, as above remarked, we are not permitted to retry this case on the weight of evidence, but simply to determine whether plaintiff introduced any evidence tending to show a partnership. It is now settled beyond a doubt, that there need not be any specific agreement to share losses as well as profits, the other elements being present, in order to constitute a partnership. Where parties engage in a common undertaking or business, with the understanding that they are to divide the profits, it follows naturally, in the absence of any specific understanding to the contrary, that they must share the losses. These parties having consulted together, it is probable they felt so certain as to the result, that they took little heed of the possibility of a loss. Having engaged in one successful venture together, they probably expected that this would be equally successful and intended to be jointly interested in that branch of the work that each considered to be the one for which he was most capable, and they were mutually interested in the venture whether it resulted in profit or loss.

4–6. Great stress is laid on the fact, that this being a nontrading partnership, neither party had power to bind the other, or incur any debt which would make the other party liable; but the testimony introduced on behalf of the plaintiff tends to show that no money

was borrowed and no debt incurred without the concurrence of both parties. We take the rule to be fairly stated in the case of *Ross* v. *Willett*, 76 Hun, 211 (27 N. Y. Supp. 785), in which the court said:

"A joint adventure is a limited partnership, not limited in a statutory sense as to liability but as to its scope and duration, and, under the laws of the State of New York, joint adventures and partnerships are governed by the same rules."

The authorities are conflicting upon the right of one partner in a nontrading partnership to borrow money and bind another partner without his consent to the transaction; but there is substantially no dispute as to the right of one partner to so bind the partnership where there is a consent to the transaction by the other member of the partnership, or where it is absolutely necessary to carry on the business. Such is the true interpretation in *McManus* v. *Smith*, 37 Or. 222, 226 (61 Pac. 844), wherein it is said:

"One partner cannot in the absence of express authority bind the firm or his copartner by a note executed by him in the firm name, in a transaction wholly outside the apparent and actual scope of the partnership business, although it may appear that the consideration for the note was applied to the payment of a firm debt." See, also, *Harris* v. *Mayor etc. of Baltimore*, 73 Md. 22 (17 Atl. 1046).

We think there is not only evidence here of the actual existence of a partnership, but also evidence of the knowledge and consent of the defendant Ellis to the borrowing of this money, which, it is conclusive, was used in the prosecution of the work of the partnership that could not have been carried on otherwise. As to the comparative weight of that testi-

mony, we are not permitted to inquire. Suffice it to say, taking the plaintiff's testimony as true, the defendant Ellis and W. H. Lee entered into a partnership to perform this bridge contract, and the money here sued for was furnished to said partnership with the full assent of both parties and was necessary and actually used for the performance of the contract.

7, 8. Some objection was made to the admission in evidence of a letter from W. H. Lee to the National Surety Company written about three days after the formal contract with the said State Highway Commission had been executed, wherein he advises the National Surety Company that "Mr. Ellis has been my silent partner in other contracts and will be also in this one." While its value was doubtful, it could not have possibly injured the defendant's case in any way. As to the conversation between W. H. Lee and the plaintiff, there had already been, by plaintiff's testimony, a *prima facie* partnership made out between the parties and therefore its admission was not objectionable. In addition to that, the defendant W. H. Lee testified as a witness covering substantially the same ground, as was covered by this conversation, in his oral testimony, and it is impossible to see how the latter conversation alluded to could have prejudiced the defendant's case under the circumstances. In *Griffin* v. *Griffin,* 95 Or. 78, 92 (187 Pac. 598), it is said:

"However incompetent or immaterial evidence admitted upon the trial of a cause by the court without a jury is presumed to be disregarded by the court where there is other competent testimony supporting the findings of the court. The rule is different from that in a case tried before a jury."

After a careful consideration of the whole case, we are of the opinion that the case was tried fairly upon the facts, correctly as to the law, and that the defendant has no grievance which calls us to reverse the case.

9. It is hardly necessary to remark that the equities between Ellis and W. H. Lee with reference to the affairs of the partnership cannot be settled in this case.

The judgment is affirmed.                 AFFIRMED.

BURNETT, C. J., and RAND and COSHOW, JJ., concur.