Argued at Pendleton October 30, affirmed December 11, 1928.

HENRY C. HANSEN *v.* ALBERT L. BOGAN.

(272 Pac. 668.)

For appellant there was a brief over the names of *Mr. J. A. Burleigh, Messrs. Dey, Hampson & Nelson* and *Mr. Herbert L. Swett,* with an oral argument by *Mr. Burleigh.*

For respondent there was a brief over the names of *Mr. George W. Cherry* and *Mr. Daniel Boyd,* with an oral argument by *Mr. Cherry.*

BROWN, J.—The parties hereto are dealers in live-stock. In his complaint the plaintiff avers that for several years immediately prior to the filing thereof he had been engaged in buying and selling livestock in Wallowa County, Oregon, and, during that time, had become widely acquainted with the stock-raisers in that county. He asserts that, on July 28, 1927, he entered into an agreement with the defendant to purchase beef and stock cattle for shipment to Port-

land, Oregon, and for sale on the local market, under the terms of which the plaintiff agreed to supply an automobile and devote his time to that business, and the defendant agreed to furnish the money for the purchase of such livestock, the net profits or proceeds of all transactions to be divided equally between plaintiff and defendant; that, in pursuance thereof, plaintiff and defendant purchased stock and beef cattle for shipment to Portland and for local sale, and, in accordance with their arrangement, the profits derived from the business were equally divided between them. Plaintiff then averred that, subsequent to the settlements and the division of profits hereinbefore referred to, and until September 17, 1927, additional livestock was purchased under this agreement, but that on or about that date the defendant repudiated the terms of the partnership contract. He averred that the defendant had no property in his own right which could be reached by process of law; that defendant threatened to remove and dispose of the livestock purchased by plaintiff and defendant, and, unless restrained by the court, would leave the plaintiff without remedy or redress. He further alleged that, prior to the commencement of this suit, he demanded an accounting with the defendant, which the defendant ignored.

The defendant, answering, admitted that ''plaintiff and defendant had an agreement, understanding and arrangement relative to the purchase of livestock and the probable formation of a partnership in connection with said business.'' Defendant asserts that the plaintiff was working on a commission basis of $1 per head for all cattle that he assisted the defendant in purchasing, but that an agreement to form a partnership was made on condition that the plaintiff came

into possession of the sum of $3,000 by September 1, 1927, which sum would equal the amount that the defendant then had in the business. He asserts that, prior to September 1, 1927, they were proceeding with the understanding that if the plaintiff raised the $3,000 on or before that date, for the purpose of a division of profits they would consider the partnership as commencing on July 28, 1927, the date of the contract, and would equally divide any profits made in purchase and shipment of livestock prior to that date, but that, in the event that the plaintiff did not raise the $3,000 on or before September 1, 1927, he should be paid by the defendant at the rate of $1 per head for all cattle purchased by defendant through plaintiff's assistance prior to that date; that, pursuant to their agreement they kept an account of the livestock purchased and the profit made on the purchase thereof, and on each shipment or sale of cattle so purchased; and that the net profits accruing from all shipments and sales made prior to September 1, 1927, were equally divided between them. But, he says, this equal division was made with the understanding that if a partnership was formed by the plaintiff and defendant on September 1, 1927, such division of profits would stand as a final settlement of their accounts, but that if no partnership was formed in accordance with the aforesaid agreement, a settlement would be made upon the basis of $1 per head to the plaintiff for all cattle that plaintiff had assisted defendant in purchasing; that if this amount was in excess of one half of the profits made on such shipments or sales, defendant would pay the plaintiff the difference, and, if less than one half the profits that the plaintiff would refund such difference to the defendant. He

alleges that plaintiff and defendant continued to work together under this agreement until September 1, 1927, at which time plaintiff failed to produce the $3,000 hereinbefore referred to, and that, by reason of the premises, no partnership was formed or existed between them. Defendant asserts that the plaintiff assisted in the purchase of 327 head of cattle, and that plaintiff's commission thereon at $1 per head was $327, but that defendant has paid plaintiff the sum of $670, and that plaintiff owes to defendant as a refund thereon the sum of $343; that, subsequent to September 1, 1927, plaintiff and defendant purchased 64 head of cattle, upon which plaintiff earned a commission of $64, to be applied as a credit against the amount owing to defendant, leaving a balance due from plaintiff to defendant of $279, in which amount defendant asks judgment.

As a first proposition of law, the defendant asserts that the court should have submitted this case to a jury for trial as a law action, instead of retaining equitable jurisdiction thereof. We have seen that not only the plaintiff, but the defendant, submitted himself to the equitable jurisdiction of the court and sought affirmative relief. Mindful of this fact, we direct attention to the case of *Gillihan* v. *Cieloha,* 74 Or. 462 (145 Pac. 1061), where Mr. Justice McBRIDE wrote:

"In any case, both parties having submitted themselves to the equitable jurisdiction of the court and asked for affirmative relief; and, having chosen to litigate their rights in this forum, we will not seek specious reasons for declining jurisdiction."

This question was also at issue in *Spencer* v. *Wolff,* 119 Or. 237 (243 Pac. 548), where this court held, in an opinion by Mr. Justice CosHow, that the Circuit

Court has jurisdiction of a proceeding for discovery and accounting of partnership funds, whether it be a suit in equity or an action at law, and that, in view of Section 390, Or. L., such proceeding will not be dismissed because addressed to the wrong side of the court.

There is sharp conflict between the pleadings and the testimony adduced by the respective parties in support thereof. The plaintiff testified to a set of facts which, if true, would constitute a partnership between the parties hereto. On the other hand, the defendant testified to a conditional partnership agreement.

A partnership is the result of a voluntary contract between the persons held to be partners. Among the numerous definitions of the term "partnership," we quote the following comprehensive definition of Chancellor Kent:

"A contract of two or more competent persons to place their money, effects, labor and skill, or some or all of them, in lawful commerce or business, and to divide the profit and share the loss in certain proportions." 3 Kent, Comm.

The defendant contends that the plaintiff was not a partner because, he says, the contract did not touch upon any losses which might occur in the conduct of the business. On the subject of a partnership association the editors of Ruling Case Law have written:

"There need be no express agreement that each party shall bear a share of any losses which may occur in the business, since, as a legal consequence, one participating in the profits of a partnership is held liable for a share of the losses." 20 R. C. L., p. 826, § 30.

To like effect, see *Lee* v. *Ellis,* 121 Or. 259 (253 Pac. 873).

This contention, therefore, is without merit. In fact, upon cross-examination the plaintiff testified, in effect, that he had expected to share any losses which might occur. In brief, according to plaintiff's testimony, the contract which he made with the defendant embraced all the essential elements of a partnership; that is to say, they voluntarily contracted each with the other for the formation of a partnership, and their contract provided for the sharing as common owners of the profits and losses of the business of buying and selling cattle. He testified to the execution of their agreement by the purchase and sale of cattle and the sharing of the profits. This testimony is corroborated by the defendant. The plaintiff testified, and the defendant admitted, that prior to September 1, 1927, a settlement was had between them, and that they shared the profits equally. There is undisputed testimony in the record showing that the sales prior to September 1, 1927, were at a profit, and that the defendant drew his checks in favor of the plaintiff for his share of the profits.

In this connection we note the following excerpt from 20 R. C. L., page 824, Section 28:

"The accepted view to-day is that the sharing of profits is not *per se* conclusive of partnership * * . But participation in the profits of a business is still cogent evidence of a partnership, and a most important element in determining the question."

However, at page 825, Section 29, the editors continue thus:

"One of the rules for determining the existence of a partnership, which formerly met with general ap-

proval, is that a sharing of both profits and losses will constitute a partnership. It has been said this rule, although incomplete in some respects, is a very good one, if limited in its application to the actual contract which the parties make, ignoring their obligations to the general public.''

This we believe to be the general rule, and the safer doctrine to follow in determining the question at issue here.

We are of opinion that the trial court had jurisdiction to hear and determine the issues involved herein, and that that determination was in accordance with the weight of the evidence adduced.

This cause is affirmed.                              AFFIRMED.

RAND, C. J., and BEAN and BELT, JJ., concur.