Argued December 19, 1952, reversed January 21, 1953

BARBER, JR., Trustee *v.* HENRY et ux.
and WHEATLEY et al.

252 P. 2d 802

*E. B. Sahlstrom,* of Eugene, argued the cause and filed a brief for appellants.

*Windsor Calkins* argued the cause for respondent.

On the brief were Calkins & Calkins, of Eugene.

Before BRAND, Chief Justice, and ROSSMAN, LUSK and TOOZE, Justices.

TOOZE, J.

This is a suit brought by William G. East, trustee, as plaintiff, against Howard H. Henry et al., as defendants, to foreclose a lien for labor and materials furnished by Eugene Construction Company, Inc., in the construction of a building upon land owned by defendant Howard H. Henry in Lane County, Oregon.

Before trial plaintiff William G. East, having been appointed a judge of the circuit court, resigned as trustee, and John L. Barber, Jr., was appointed trustee in his place and stead and was substituted as party plaintiff.

The trial court entered a decree awarding judgment against defendant Howard H. Henry in the sum of $14,072.34, with interest, attorney's fees, and costs; decreeing the amount of the judgment to be a valid first lien against the premises owned by said defendant, that the lien be foreclosed, and that the land be sold to satisfy the judgment as provided by law. Defendants Howard H. Henry and Dorothy H. Henry, his wife, appeal.

At the time of the construction of the building involved in this litigation, Eugene Construction Company, Inc., an Oregon corporation, hereinafter referred

to as "Construction Company", was a going concern, engaged in the contracting and building construction business in Lane county.

On June 4, 1948, the Construction Company entered into a written contract with defendant Howard H. Henry for the construction of a supermarket building on land owned by said defendant and located on the McKenzie river highway. The Construction Company agreed to erect the building, furnishing all labor and materials necessary, upon a cost plus 10 per cent basis.

Actual work of construction commenced on or about June 5, 1948, and was completed on or about August 15, 1948. On August 23, 1948, the Construction Company, as claimant, filed with the county clerk of Lane county its written notice of mechanic's lien, covering the tract of land owned by defendant Howard H. Henry, upon which the building was erected. The lien notice set forth a total charge for labor and materials in the sum of $17,572.34, with a credit of $3,500, leaving a balance of $14,072.34 due the claimant. Attached to and made a part of the lien notice was an itemized statement of the labor and materials furnished and the charges therefor. However, neither in the lien notice itself, nor in the attached itemized statement, is there any segregation of the items of labor and material as applied to the particular portions of the construction. All charges are in lump sums.

On November 4, 1948, the Construction Company assigned its lien to William G. East, trustee, for the benefit of certain named creditors, firms and individuals who had furnished to the Construction Company labor and materials for the construction of the building. In the spring of 1949 the Construction Company became an involuntary bankrupt.

On this appeal defendants set forth seven assignments of error. The view we take of the case renders unnecessary a discussion of any of these assignments except that numbered VI.

Defendants by this assignment allege that "the court erred in allowing plaintiff to introduce into evidence over the objection of the appellants, plaintiff's exhibit C, being the mechanic's lien, in upholding the validity of the lien and in decreeing a personal judgment for the full amount of the lien", because, as defendants assert, the lien notice is defective in the following particulars:

"1. Lienable and non-lienable items are lumped together in unsegregational form.

"2. Failure to make a true statement of the demand in the lien notice.

"3. The corporation seal does not appear on the lien notice."

The decisive question in this case is whether lienable and nonlienable items have been so lumped together in the lien notice that a segregation thereof cannot be made except by resort to evidence aliunde.

■ It has become hornbook law in this state that a lien cannot be upheld if the lien notice mingles in unsegregational form lienable and nonlienable items. Such a defect cannot be cured by oral evidence, by means of which the items for which a lien is given may be separated from those for which a lien is not given. *Christman v. Salway et al.,* 103 Or 666, 672, 205 P 541.

In its findings and decree the trial court took notice of one nonlienable item appearing in the lien notice; viz., a charge of $20 for a water connection. This item was stricken.

However, the record discloses that in the lump sum charges for labor and material as shown in the lien notice there are included, without any segregation, charges for the construction of certain equipment inside the building. Defendants maintain that these articles of equipment were trade fixtures only; that they were in no sense attached to the realty, remained personal property, and, therefore, constituted nonlienable items. If those items are nonlienable, as contended by defendants, the lien is invalid.

Acting for the Construction Company, Edward R. Scott, its then president, superintended the erection of the building. As a witness for plaintiff, Scott testified on cross-examination:

"Q And isn't it a fact that there were items there for the placing of groceries? Can you describe those to the Court?

"A Well, the bigger part of the — the front, inside the front windows was trays or racks for vegetables, shelving along the — I believe along the entire east side of the building for canned goods and such things, and part of the north side, I believe, up to the bat wing doors. Then west of the doors was larger shelves. I believe I am right — for bigger boxes, oh, breakfast foods and such things. Then there were all the islands that Mr. Henry requested.

"Q What are the islands? Describe those, will you?

"A Well, they are the shelves for display in the center of the room, in the center of the building.

"Q They are placed in the very center of the building, aren't they?

"A Yes. Well, they are all over the building.

"Q You can move them over the building wherever you want to, isn't that the idea?

"A Yes, that is true. *They were portable units.*

*All those in the center of the building were portable units.*

"Q How many units were there of that type?

"A I can't remember that, whether six or eight, or how many of those I wouldn't attempt to say now.

" * * * * *

"Q Anyway, some of that plywood there was used for these islands in the middle of the store, is that right?

"A All the plywood.

"Q And some of the shelving, too; is that right?

"A That is right.

"Q And how about the labor as to those particular items?

"A Well, I have always figured labor on that type of work twice the cost of the material.

"Q Does this lien show anyplace where the labor is set forth for the islands alone or for the fixtures alone?

"A *No, it is not.*

"Q *All lumped together in one sum?*

"A *That is right.*

"Q And you aren't sure about the specific material being used for any specific purpose either, are you?

"A *No, it wasn't broken down that way.*

"Q *It is all lumped together?*

"A *It is all in one.* All the material and labor for the work for Mr. Henry is all taken over on a monthly basis or from day to day as the cost was incurred.

"Q And how about that little walk-in stand that they had for the cash register in the front of the building?

"A We built that.

"Q You built that, too? *Is that also a portable device, too?*

"A *Yes, it is.*

"Q And about what would that consist of? Lumber and plywood again and labor? Is that about it?

"A Yes. I don't even remember what it looked like, now, except that if I remember correctly, there were two of those.

"THE COURT: I suppose you are attempting to show that they are lienable or non-lienable items?

"MR. SAHLSTROM: All lumped together, your Honor.

"THE COURT: I wondered about that.

"Q Did Tom Wheatley do the painting on all of these items, too?

"A He did.

"Q All the store fixtures?

"A I believe Tom Wheatley done all the painting.

"Q I will hand you Plaintiff's Exhibit No. C and ask you to tell the Court how the lien indicates the labor and material of the painting work?

"A Labor, equipment and materials for painting, $1123.72.

"Q By whom?

"A That is Tom Wheatley.

"Q Is there a breakdown of the labor and material there at all?

"A No, not here.

"THE COURT: It seems to me those islands would not be a part of the building. They are portable.

"MR. BARBER: We would like to bring that out on redirect." (Italics ours.)

Upon his redirect examination, Scott further testified:

"Q Mr. Scott, as a matter of fact, all of this equipment that was placed in the building and built for you was for that building, isn't that correct?

"A That is right.

"Q *And it was of a permanent nature, isn't that right?*

"A That is right.

"Q Now, these counters could not be moved out of the door; isn't that correct?

"A Some of them wouldn't go out the door. I wouldn't say that they wouldn't all go out the door, but most of them wouldn't.

"Q Now when these items were ordered they were in compliance with—

"MR. SAHLSTROM: I will object to this line of examination, all leading.

"THE COURT: Overruled.

"Q (By Mr. Barber) And you went ahead and completed the building with the fixtures just as he requested you to do?

"A Just as he asked us and to his own specifications.

"Q When this building was planned it was planned as a grocery store?

"A Supermarket.

"Q All that was done in connection with this building, was to build it and equip it for a supermarket?

"A That is right." (Italics ours.)

Scott was later recalled to the stand by plaintiff and on direct examination testified as follows:

"Q Mr. Scott, there has been some question raised here with reference to these islands or counters that were built in the interior of the grocery store. We were wondering if you can estimate as to the cost of those islands.

"A As near as I remember, there was about a thousand feet of plywood, that would be a thousand board feet of three-quarter plywood, used in the construction of them. The other materials for framework and bracing and so on, I wouldn't even attempt to try and designate the amount.

"Q What would the approximate cost of the material be in those islands?

"A Well, if I remember that correctly, that material cost us 30¢ a square foot, which would be $300.00.

"Q What was the cost of the labor in the construction of those islands?

"A Well, I have only my one basis for comparison. And on all interior work of that nature I have always estimated labor at double the cost of the material.

"Q So that would be a $900 total cost for those islands; is that correct?

"A Yes.

"Q And how many of them were there?

"A I think there were six islands and two cash register stands. I am not absolutely positive.

"Q Were these large items?

"A The islands themselves were long, heavy stands, yes. I would say they were 12 or 14 feet in length."

Upon cross-examination the following testimony was given:

"Q Mr. Scott, you haven't kept any detailed records as to the individual cost of these particular items you just testified to, have you?

"A I have not.

"Q And you are just testifying from your recollection as to what the estimated cost might be?

"A Yes, the estimated amount of material that went into the items.

"Q And you aren't trying to tell this Court as to the contract price for the labor or material for those particular items, are you? Just your estimate?

"A That would be an estimated cost, the same as the entire building.

"Q And I believe we brought forth before that the labor was all included as so much for each

particular week, so many dollars of labor, is that correct, in the lien notice?

"A That is right.

"Q And it isn't broken down as to any labor for any particular items, such as the islands or for the shelves or the pumice stone or anything else, is it?

"A No."

From the foregoing testimony it conclusively appears that the islands mentioned, together with the walk-in stand for the cash register, constituted personalty only. They were not intended to, nor did they, become permanently, substantially, or constructively annexed to the building. As stated by the witness, they were portable units. It is true that they were constructed for use in the proposed supermarket, but the contemplated use did not necessarily fix their character as permanent fixtures annexed to the realty, either actually or constructively. There was nothing peculiar about their construction that rendered them useful only in that particular building, or only in the business proposed to be conducted therein. The islands could be moved about from place to place inside the building and could be removed therefrom at any time, without damage to the structure, and were adapted for use in any other building for the display of merchandise or other suitable purposes. The reply of the witness Scott to the leading question, "And it was of a *permanent* nature, isn't that right?" in no way alters the ultimate fact. (Italics ours.) His reply, "That is right", was simply his conclusion. The fact of the matter is that this equipment never lost its character as personalty.

■ Mechanics' and materialmen's liens are purely statutory and are obtainable only by those who can

meet the statutory requisite. As Mr. Justice ROSSMAN said in *Ward v. Town Tavern et al.,* 191 Or 1, 14, 228 P2d 216: "Like claimants for Cinderella's slipper, an exacting demand must be met by applicants for a lien, and all who cannot conform are rejected."

The lien of a mechanic, builder, contractor, or other person "performing labor upon or furnishing material, * * * to be used in the construction, alteration or repair, * * * of any building" is provided for by § 67-101, OCLA. We have in many cases construed that statute. Among our most recent opinions are *Ward v. Town Tavern et al.,* supra, and *Timber Structures v. C.W.S.G. Wks.,* 191 Or 231, 229 P2d 623, 25 ALR2d 1358.

No lien is obtainable under the provisions of § 67-101, OCLA, for anything done concerning a building unless the thing done consisted of "performing labor upon or furnishing material" used "in the *construction,* alteration or repair" of the building. (Italics ours.) It is not obtainable for the construction of moveable trade fixtures used in the building, nor for any other equipment that is not actually or constructively annexed to the building as a necessary and permanent part thereof.

It is unnecessary to prolong this opinion by a discussion of the rules of law respecting trade fixtures and mechanics' and materialmen's liens. In *Ward v. Town Tavern et al.,* supra, and in *Metropolitan Life Ins. Co. v. Kimball,* 163 Or 31, 94 P2d 1101, Mr. Justice ROSSMAN, speaking for the court in both cases, covered these questions in detail. We can add nothing to what was stated there.

The inclusion of these nonlienable items in the lien notice, without segregation, renders the lien invalid.

Plaintiff having failed to establish his right to the lien, no basis remained for the equity court to enter a money judgment against the defendant Howard H. Henry. *Ward v. Town Tavern et al.,* supra; *Powell et al. v. Sheets et al.,* 196 Or 682, 251 P2d 108. That rule is now firmly established in this state. .It might well be argued that its application in some cases leads to harsh results, but that is beside the point. Relief therefrom, if desirable, cannot be obtained in the courts; that is solely a matter for legislative consideration.

■ Upon the conclusion of the trial, when the record had clearly disclosed that the lien was invalid, defendants moved the court for an order transferring the cause to the law side of the court where a jury trial might be had upon plaintiff's claim. The motion was denied, but it should have been allowed. The complaint alleges a good cause of action against defendants for the recovery of the value of the labor and materials furnished by the Construction Company, but defendants are entitled to a jury trial upon plaintiff's demands. *Ward v. Town Tavern et al.,* supra.

Inasmuch as subsequent to the commencement of this suit the Construction Company became an involuntary bankrupt, the trustee in bankruptcy should be substituted as party plaintiff.

The decree of the trial court is reversed and this cause remanded for such further proceedings as may be proper, not inconsistent with this opinion.

Defendants are entitled to costs.