Argued October 5, affirmed December 7, 1955, argued on
rehearing April 18, affirmed May 31, 1956

FLAHERTY *v.* BOOKHULTZ ET AL

291 P. 2d 221
297 P. 2d 856

*L. V. Weiser* argued the cause for appellants. On the briefs were Weiser & Bowles, Portland.

*Fred B. Duffy* argued the cause for the respondent. On the briefs were William J. Crawford and Parker & Duffy, Portland.

Before WARNER, Chief Justice, and LUSK, BRAND and LATOURETTE, Justices.

WARNER, CJ.

This appeal comes to us from a judgment in what the appellant denominated a suit in equity, but which the trial court apparently thought and treated as an action at law. The plaintiff sought to recover judgment for commissions earned under an oral contract of employment to sell certain machinery and equipment for the defendants, Bookhultz and Riley—copartners doing business as Geo. E. Zweifel & Co. The case was tried before the court without a jury, and from a judgment in favor of the plaintiff the defendants appealed.

■ As indicated by the foregoing statement there is a sharp difference of thought whether this is an appeal in equity or in law. It raises a question which necessitates an answer before we proceed further. There is no bill of exceptions. If the appeal is in equity, this is a matter of no importance. But, if the appeal is from an action at law, then appellants' four assignments of error must be found in and supported by such a record. In the absence of a bill of exceptions the only questions that can be considered on appeal are the sufficiency of the pleadings, the findings of the trial court, and whether the pleadings, or pleadings and findings support the judgment; and if we find them sufficient then our conclusion must be one of affirmation of the circuit court's judgment. In so doing we have no discretion, *La Grande Air Service v. Tyler,* 193 Or 329, 330, 237 P 2d 503, and cases cited.

Appellants contend that this is an action for an accounting in equity. They claim equitable jurisdiction because the parties treated it as in equity during the course of the trial. In Paragraph VI of plaintiff's

amended complaint we find the only allusion to an accounting. It there appears in these words:

"That the defendants have failed, neglected and refused to account to the plaintiff for the commissions on said sales, although often requested by the plaintiff so to do, and the defendants refuse to pay to plaintiff commissions on said sales and on said business as provided in said agreement between the plaintiff and defendants; that it is necessary that an accounting be had in order that the amounts payable and due to the plaintiff from said defendants under said sales agreement between the plaintiff and the defendants can be determined."

■ This court has long recognized a clear distinction between the right to an accounting at law and the right to an accounting in equity. *Kaston v. Paxton,* 46 Or 308, 80 P 209, 114 Am St Rep 871, was described as "a suit for an accounting" of rentals received by defendant, but there we held the remedy was one at law for money had and received to the plaintiff's use, and ruled that the complaint failed to state facts justifying recourse to a court of equity.

In *Smith v. Howell,* 91 Or 279, 301, 176 P 805, we pointed out that: "Standing alone, the request for an accounting on the part of the plaintiffs will not be sufficient to take the case into equity on the ground solely that the plaintiffs seeking the relief may owe some money to the defendants." The opinion followed this with the statement: "There is no allegation herein as to complexity of accounts between the parties, or in the nature of a discovery, or that a fiduciary relationship exists between the parties, nor any allegation of fraud."

In *Huebener v. Chinn,* 186 Or 508, 531, 207 P2d 1136, we approved the distinction made by the Supreme

Court of Iowa in *Williams v. Herring,* 183 Iowa 127, 165 N.W. 342, L.R.A. 1918F 798. In the Williams case the Iowa court held that even though the number of items upon the books and transactions covered by the period of said business might be cumbersome and difficult to present to a jury, yet the accounts were not complicated nor intricate as far as the pleadings disclosed. The court emphasized that the fact that the accounts could be more "conveniently" tried to the court than to a jury was not a ground for equitable jurisdiction, saying that, " * * * there must be some other ground of equitable cognizance". Later, in the Huebener opinion we find this statement from *Goffe & Clarkener, Inc., v. Lyons Milling Co.* 26 F2d 801; "It is entirely clear that mere difficulty of proof does not confer jurisdiction upon equity."

■ Upon what basis, then, may a complaint properly lay jurisdiction in equity in an action involving accounts and accounting? As indicated by *Smith v. Howell,* supra, several grounds for equitable cognizance are immediately apparent. Courts of equity have jurisdiction over trusts, express or implied, for the purpose of compelling an accounting. Courts of equity have jurisdiction to settle accounts whenever a fiduciary relationship exists between the parties and the duty to render an account to one of the parties rests on the other. *Templeton v. Bockler,* 73 Or 494, 507, 144 P 405, and cases there cited.

■ An accounting may be had as incidental to other equitable relief. If the accounts proved to be complicated in the instant case, a plain, speedy and adequate remedy was available by recourse to ORS 17.725, resulting in the appointment of a referee to take an account. See *Pearson v. Oregon-Washington Railroad & Nav. Co.,* 135 Or 336, 295 P 201, 296 P 50.

■ A court of equity may also take jurisdiction in a case where an accounting is sought provided it satisfactorily appears that the account is so complex that justice cannot be done without resort to the superior equipment of the equity court. Averments concerning the complexity must be made, and in such specific form that the chancellor can see from the pleadings that he, and not a jury, should try the issues. *Huebener v. Chinn*, supra; 1 Am Jur, Accounts and Accounting, § 53, p. 301; Pomeroy's Equity Jurisprudence (2d) § 2357.

■ We are unable to find in the pleadings of the matter before us any basis for equitable jurisdiction. Rather, we find an action in law to recover money due on a contract of employment, providing for compensation in the form of commissions. More precisely, the instant action is in law to recover the commissions as money had and received to the plaintiff's use. True, it is an action equitable in nature, but nevertheless governed procedurally by the rules of law. *Huebener v. Chinn*, supra.

■ The plaintiff concluded his complaint with a prayer for, among other things, ''such other and further relief as to the court seems meet and equitable in the premises''. But the prayer is no part of the cause of suit or of action, and therefore this phrase can add no strength to a claim for equitable jurisdiction. *Elliott v. Mosgrove*, 162 Or 507, 91 P2d 852, 93 P2d 1070.

■ On the other hand, the learned judge below entered a ''judgment'' in behalf of the plaintiff. Here we find a money judgment at law for $5,746.97, and without any species of equitable relief so common to the decrees in equity suits. Admittedly, these are technical distinctions taken at random from the abstract.

Still, they seem to reinforce the argument that this was at all times a case in law rather than one in equity. An exhaustive examination of the trial proceedings fails to disclose one instance warranting a conclusion that the court below regarded this case in any manner other than as an action at law.

The oral argument by counsel for the parties makes it clear that they assumed equity had taken jurisdiction of the case below. Counsel for the appellant and respondent, in answer to questions from the court, several times stated that in their opinion this was a suit in equity.

■ But, we ask, can equitable jurisdiction be conferred by stipulation, or even by mutual acquiescence, when no matter of equitable cognizance was plead? We think not. The test of the jurisdiction of a court of equity is whether facts exist at the time of the commencement of the action sufficient to confer jurisdiction on the court. If equity has no jurisdiction of the subject matter of the suit, it is clear it could not be obtained by consent or acquiescence of the parties. *Small v. Lutz,* 34 Or 131, 136, 55 P 529, 58 P 79; *Dant & Russell, Inc. v. Pierce,* 122 Or 337, 346, 255 P 603. *In re Ostlind Mfg. Co.,* 19 F Supp 836, 838 (Dist. Ct. Or.)

Having noted the absence of a bill of exceptions and finding no assignment challenging the respondent's pleadings, or the court's findings, or the sufficiency of the pleadings and findings to support this judgment, we, therefore, have no alternative but to confirm the judgment of the lower court, and it is so ordered.

**ON REHEARING**

470

*L. V. Weiser* argued the cause for appellants. On the briefs were Weiser & Bowles, Portland.

*Fred B. Duffy* argued the cause for respondent. On the brief were William J. Crawford and Parker & Duffy, Portland.

Before WARNER, Chief Justice, and TOOZE, ROSSMAN, LUSK, BRAND and PERRY, Justices.

PER CURIAM.

Defendants' petition for a rehearing was allowed, and the cause was reargued on April 18, 1956. Our original opinion was handed down December 7, 1955. In their petition and on oral argument defendants, in part, contended that we erred in our original opinion in the following respects:

"I.

"The court erred in finding that the pleadings did not allege matters of equitable cognizance in the following respects:

"(a) That an accounting was sought by the respondent involving transactions of an extensive and complex nature.

"(b) That a discovery was sought by the plaintiff and ordered by the court.

"(c) That a fiduciary relationship is shown from the pleading of the fact that the appellants had funds in their possession belonging to the respondent and that the records pertaining thereto were in the sole care and custody of the appellants.

"(d) That the prayer of the respondent's complaint asked for an accounting and for such other and further relief as to the court seemed meet and equitable.

"(e) That the accounting involved mutual demands.

## "II.

"The court erred in failing to find that in matters pertaining to an accounting that there is concurrent jurisdiction by courts of law and courts of equity.

"* * * * *

## "IV.

"The court erred in failing to find that any defects in the pleadings and objections to the jurisdiction of a court of equity were waived by the parties."

It is unnecessary for us to discuss in detail the several contentions made by defendants. It is frankly conceded that in our original opinion we erred in failing to recognize the fact that the subject matter alleged in the third amended complaint was not clearly beyond the pale of equitable cognizance, nor was it beyond the inherent power of equity to grant the relief demanded. The case was tried as a suit in equity and was so appealed to this court. Upon the trial there was an accounting and also a discovery. All records pertaining to commissions collected by defendants were in their possession, and an accounting was necessary. It is true that plaintiff might have proceeded at law by an action for money had and received, and in such action

could have had an accounting and a discovery, but in the absence of a demurrer or other objection by defendants to the jurisdiction of equity on the ground that plaintiff had a plain, speedy, and adequate remedy at law, defendants must be deemed to have waived their objections to equitable jurisdiction. However, we do not wish to be understood as saying that parties may confer jurisdiction in equity upon agreement between themselves, either expressly or impliedly. That is not the situation in this case. We note in passing that on the original hearing in this court neither party, in his brief or on oral argument, advanced the theory that equity did not have jurisdiction in this matter. The theory erroneously advanced in our original opinion, and upon which we based our decision, was our own, and not that of the parties. This case must be tried de novo in this court as a suit in equity. The facts bring it squarely within the principles announced in the following decisions: *Nelson v. Hampton,* 206 Or 573, 294 P2d 329; *Barnes v. Eastern and Western Lumber Co.,* 205 Or 553, 287 P2d 929; *Barber, Trustee V. Henry et al.,* 197 Or 172, 252 P2d 802; *Walker et al. v. Mackey et al.,* 197 Or 197, 251 P2d 118, 253 P2d 280; *Powell et al. v. Sheets et al.,* 196 Or 682, 251 P2d 108; *Yellow Mfg. Accept. Corp. v. Bristol,* 193 Or 24, 236 P2d 939; *Ward v. Town Tavern et al.,* 191 Or 1, 228 P2d 216; *Pedro et al. v. Vey et al.,* 150 Or 415, 39 P2d 963, 46 P2d 582; *Hansen v. Bogan,* 127 Or 399, 272 P 688; *Elliott v. Murphy Timber Co.,* 117 Or 387, 244 P 91.

During the time involved in this litigation defendants Donald Bookhultz and Albert W. Riley were co-partners doing business under the assumed name of "George E. Zweifel and Company," with their place of business located in Portland, Multnomah county, Oregon. Defendants' business consisted chiefly of the

solicitation of orders for the sale and purchase of heavy machinery and equipment, upon which sales they were paid commissions by the selling manufacturers. They also took orders for and sold machinery and equipment parts.

On January 15, 1950, the plaintiff Lawrence H. Flaherty was employed by defendants as a salesman under an oral contract of employment for an indefinite term. For his services plaintiff was to be paid on a commission basis. According to plaintiff, the oral agreement of employment provided that he was to receive and defendants agreed to pay for his services 50 per cent of all commissions received by defendants from the factory or manufacturers for the sales and purchases of machinery and equipment, except sawmill machinery and equipment, the amounts due plaintiff to be paid him when such machinery and equipment so sold were delivered to and paid for by the ultimate purchasers and when the commissions on such sales had been received by defendants; that upon the sales of sawmill machinery and equipment, plaintiff was to be paid commissions only on sales which he himself promoted; that plaintiff was to have a drawing account of $300 per month to be charged against commissions earned by him; that plaintiff was to be reimbursed by defendants for monies expended for gas and oil in the operation of his automobile in connection with the business and other out-of-pocket expenses incurred as the result of his employment, and also three cents per mile mileage for the use of his car for business purposes.

Defendants denied that the employment agreement provided for the reimbursement of plaintiff for automobile expenses, but on this appeal those matters are not in issue. Defendants' version of the contract is

expressed in the testimony of defendant Bookhultz as follows:

"Q Now, do you recall any discussions at that time regarding the conditions of his employment with your company?

"A Yes, yes.

"Q Who was present at that time, at the time that that was discussed?

"A Mr. Riley and Mr. Flaherty and myself.

"Q When was that—about?

"A Very close to January 15th, within a day or two.

"Q Were there a series of discussions over a series of days or was it a short single discussion?

"A Well, it was a single discussion.

"Q Will you tell the Court—relate to the Court the discussion had at that time?

"A We had just taken over the company—Mr. Riley and myself, and Zweifel, that we needed someone in Flaherty's capacity, also, to be in our organization and we made an offer to him to come with us.

"Q What was that offer?

"A Well, we wanted him to handle sales and service, and actual collections on certain specified accounts that we would direct as the occasion arose.

"Q And did you discuss the extent of the subjects he was to sell, or anything such as that?

"A Well, fundamentally, his work was to be limited to machine tools sales and service.

"Q What further direction was there at that time?

"A Well, we—*we were all in agreement on the fact that we would pay him 50% of the gross commission or profit on a given sale, where it was determined it was his job.*

"Q Where it was 'determined it was his job,' you say? What do you mean by that?

"A Well, if we mentioned—as we mentioned

before, at the end of each month, our numerical sales record was discussed, either by Mr. Flaherty and myself or Mr. Flaherty and Mr. Riley; at the end of each month we marked these records so our bookkeeper would know that the particular invoices and its profits would be divided between Flaherty and ourselves.

"Q Now, how did you make that determination as to whether or not it would be Flaherty's—how were you to do that?

"A We just sat down and did it at the end of the month.

"Q How did you decide that Flaherty's account was A account or B account?

"A Dependent on the work done, who took the account.

"Q Did he accede to that method of handling it?

"A We did it every month and we didn't have any complaint on it.

"Q What discussion, if any, regarding the contract with him as to payment, service, and such things as that, that is, when would it be paid?

"A We naturally couldn't pay him until after the customer had paid us and an invoice or a factory commission were paid us.

"Q Was he doing anything else in connection with the sales that he was making?

"A Well, he had to provide his own automobile.

"Q And what was—was there any discussion at that time as to how the automobile expense should be handled?

"A The automobile expense was entirely to be his because of the rate of commission being paid it wasn't possible for us to furnish a car or allow him anything on the use of his car. However, we did agree at that time that he should use a credit card and that when his monthly bill came to him, and we would pay it for him and charge his commission against it. With that item, and, I believe, at a later date we also paid the invoices for some tires which

he purchased and, also, I believe, one case, or perhaps there would be more, that we paid invoices rendered against repair on his automobile and those are all to the best of my knowledge charged against his account.

"Q Then, what was the agreement with respect to compensation for the use of his car?

"A Well, there was no compensation.

"Q No compensation. Was there at that time mileage discussed?

"A No.

"Q Was it discussed at any other time?

"A No, not to my knowledge.

"Q Was there any discussion regarding servicing or commissions or anything of that sort?

"A Servicing is a large part of our business. It is something that our factories expect of us.

"Q Did you discuss that with him?

"A Certainly, he had done some service calls with the old company and did certainly know that in selling machines that that is part of our job.

"Q Now, was there any discussion—

"THE COURT: Let me break in to clear up one point. Did you obtain any compensation for your services other than your commissions?

"THE WITNESS: In some of our contracts we have, it is definitely stipulated that we must service and, if we service our commission account changes.

"Q (By Mr. Weiser) Is that true on all your contracts?

"A No, not on all of them.

"Q Are you supposed to service on all your contracts?

"A Oh, certainly.

"Q Do you know whether or not Mr. Flaherty did make any service calls?

"A Yes, he did make some.

"Q For what purpose?

"A To remedy a customer's complaint, for instance.

"Q Now, at the time this original discussion occurred, was there any discussion with respect to drawings?

"A Yes, we agreed to allow Mr. Flaherty a $300 a month drawing account which, also, would be charged against his commission account.

"Q And, did you make any advances to him on drawings?

"A Oh, yes.

"Q Regularly?

"A Those were paid. * * *

"* * * * * *

"Q Did you ever agree with Mr. Flaherty that he should receive a commission on anything other than what he, himself, sold?

"A I think that we find that we have paid some commissions on things Mr. Flaherty did not sell.

"Q But did you agree to do that in your agreement with him?

"A *Not that I recall.*" (Italics ours.)

■ It will be observed that defendants contended that as a part of the contract of employment, the plaintiff, in addition to performing duties in taking orders for and selling machinery and equipment, was also required to service the equipment after it had been delivered to the purchaser. Defendants pleaded no such agreement in their answer, and plaintiff denied that he was under a contractual duty to service the equipment; he testified that such servicing as was necessary was usually done by a factory representative. But however that may be, we are satisfied from the record that the agreement between the parties did not con-

template servicing the equipment as a condition precedent to plaintiff's right to his commission; at most, servicing the equipment was a mere incident of the employment that might or might not be necessary and was not mandatory insofar as plaintiff was concerned.

Because of the nature of the business in which defendants engaged, considerable time often elapsed between the taking of an order for machinery and equipment and its delivery to the ultimate purchaser and payment therefor. In some cases the elapsed time would be six months or more, the time in each instance depending upon the ability of the factory or manufacturer to fill the order at the time it was filed.

Pursuant to his employment, plaintiff performed his duties as salesman for defendants, took orders for and sold equipment and machine tools. On November 27, 1950, plaintiff's employment was terminated by defendants. At that time, there were a number of pending orders for machinery and equipment that plaintiff had procured, but where no delivery to nor final payment by the purchaser had been made. Delivery and final payment were made after the termination of plaintiff's employment.

Plaintiff brought this suit for an accounting as to the several commissions which he claims to be due him and remaining unpaid, and for judgment therefor when ascertained and determined. The trial court conducted an accounting and made and entered detailed findings of fact and awarded judgment in favor of plaintiff in the sum of $5,746.97. It is from this judgment that the defendants appeal.

As their first assignment of error, defendants allege:

"It was error to permit the respondent to recover any sums on account of commissions where

the respondent had failed to establish as of the date of discharge (1) that he not only obtained the order but was the procuring cause in obtaining it, (2) that the equipment and machine tools sold by the respondent were at that time delivered and paid for, and (3) that the respondent had performed all services required of him in installing and getting the machinery sold into satisfactory operation.''

In support of this assignment of error defendants maintain that under a contract of employment at will (which the oral contract in this case was) an employe may be discharged at any time, and upon such discharge, he forfeits the balance of his pay which might have been due him after the fulfillment of his contract.

The evidence in this case discloses that in a few instances where plaintiff had procured the orders for machinery or equipment upon which the sales were based, and where delivery to and final payment by the purchaser occurred after the termination of plaintiff's employment, defendants were required to incur some expense in servicing the equipment. Because of this, the defendants argue that plaintiff had not performed all the services required of him before his discharge, and, therefore, was not entitled to any commission on such sales. We are not impressed by that argument. Under the facts and circumstances of this case, it is manifest that when plaintiff procured an order to be forwarded to the factory, and which was forwarded, he had done all that he could do or was required to do in connection with that sale. The payment of his commission was dependent upon the filling of such order by the factory, the delivery of the merchandise to and payment therefor by the purchaser, and the receipt of the commission on the sale by defendants, but all those acts were to be and were performed by others

and, when completed, entitled plaintiff to payment of his agreed compensation. His right to a commission was fixed by procuring an order which resulted in a completed sale; payment thereof only was deferred until three things occurred: (1) delivery of the ordered merchandise to the purchaser; (2) payment therefor by the purchaser; and (3) receipt of the commission on the sale by the defendants. On all the sales included in the findings of fact and judgment in this case, deliveries had been made, the purchase money paid, and commissions had been received by the defendants.

Therefore, it follows that plaintiff's right to a commission on a sale procured by him while in the employ of defendants is in no way affected by reason of the fact that at the time of his discharge the merchandise had not yet been delivered, or had not been paid for, or defendants had not yet received the commission.

In 3 CJS 88, Agency § 187, it is stated:

"* * * Accordingly, an agent selling goods on commission is entitled to a commission on goods sold by him during the continuance of the agency, although the goods were not delivered or paid for, or even where the orders were not received by the principal, until after the termination of the relationship. If the contract contemplates that the agent shall receive compensation for sales of which the agent was the procuring cause, the agent is entitled to a commission on sales procured by him although the sales were actually consummated by the principal after the termination of the agency."

See also *Zinn v. Ex-Cell-O Corporation*, 24 Cal2d 290, 149 P2d 177, 180; *Dibble v. Dimick*, 143 NY 549, 38 NE 724, 725.

In support of their contention that plaintiff for-

feited his right to commissions on sales made but not completed during the time he was employed, defendants cite and quote from the following authorities: *Monroe v. Grolier Society of London,* 208 Cal 447, 281 P 604, 65 ALR 989; *J. B. Holt Co. v. W. B. & M. D. Grubbs,* 204 Ky 189, 263 SW 749; *Broderick v. Taylor,* 161 So 630 (La); *Pelletier v. Dobbins-Trinity Coal, Inc.,* 59 NYS2d 676; *Ullman v. May,* 147 Ohio St 468, 72 NE2d 63; 56 CJS 522, Master and Servant § 92.

We have no quarrel with what was stated by the courts in the above decisions as applicable to the particular facts present in those cases, and particularly in the light of the contracts of employment there involved. However, the facts in those cases are readily distinguishable from the facts in the instant litigation, and hence those decisions afford no comfort to defendants here.

In 56 CJS 522, Master and Servant § 92, cited by defendants, it is stated:

"Ordinarily an employee does not forfeit his right to commissions, already earned under his contract, by the termination of his employment, as by his discharge, unless the contract of employment provides otherwise or provides for the performance of services as an entirety, or unless there is a recognized custom in the business that such right will terminate with the employment."

As we before observed, plaintiff's contractual duties were at an end in this case when he procured an order that ripened into a completed sale; his commission was then earned, although payment thereof was deferred. Delivery of the merchandise to the purchaser, collecting the sales price thereof, and receiving and accounting for the commissions from the selling manufacturer formed no part of his duties.

Defendants' first assignment of error is without merit.

As their assignment of error numbered two, defendants assert:

"The court erred in permitting any recovery by the respondent in quantum meruit under the pleadings and proof."

As to this assignment of error, defendants contend that under the pleadings the respondent (plaintiff) sought to recover on an express contract for full commission on sales alleged to have been made by him, and not having stated a cause of suit in quantum meruit, it was error to permit recovery in quantum meruit under the pleadings and proof.

No citation of authority is needed for the proposition that one cannot sue upon an express contract and recover upon a quantum meruit; to recover upon a quantum meruit, it must be pleaded and proved. In the instant case plaintiff neither alleged nor on the trial claimed a right of recovery upon the theory of quantum meruit.

The evidence disclosed that in connection with each of eight of the sales involved in this case and upon which plaintiff claimed a commission, defendants had incurred expense in servicing the machinery and equipment after delivery to the purchaser. The trial court allowed these several items so expended by defendants as offsets against the commissions due plaintiff. By so doing, the trial judge indirectly, at least, found that servicing the equipment was a part of plaintiff's contractual duties. In our opinion, formed after a careful consideration of all the facts and circumstances of this case, the trial court erred in that respect. However, plaintiff filed no cross-appeal from the action of the

trial court in allowing such offsets, and, therefore, the propriety thereof is not before us for consideration.

■ In any event, however, the action of the trial court in allowing such expenses by way of recoupment in favor of defendants did not have the effect of changing plaintiff's cause of suit based upon an express contract, to one based upon the theory of a quantum meruit. Plaintiff brought this suit to require defendants to account for and pay to him all commissions earned by him pursuant to the terms of an oral contract of employment. His demand for relief had reference only to the specific commissions due him under his contract of employment and in no way related to the reasonable value of the services which he had performed. The trial court awarded judgment for the amount of the specific commissions as due under the express contract of employment established by the evidence, and not for the reasonable value of the services performed. It is true that the court did reduce the amounts due plaintiff by the several sums expended by defendants in servicing operations, but that action on the part of the court in no way changed the theory of plaintiff's suit.

■ For their third assignment of error defendants contend that the trial court erred in rejecting evidence relative to the question of whether plaintiff had been wrongfully discharged by defendants. Under the pleadings in this case that question was not an issue. Defendants were afforded an opportunity to make it an issue by amending their answer, but did not do so. The trial court did not err in refusing to receive the proffered testimony. It was immaterial to any issue in this case as formed by the pleadings.

■■ Defendants' fourth and last assignment of error relates entirely to the facts in the case. They

contend that the plaintiff failed to establish by the evidence that he was the procuring cause with respect to the principal sales he alleges were made by him.

The accounting in this case was more or less complicated. Evidence was received respecting each sale upon which the trial court in its findings of fact and judgment allowed a commission to the plaintiff. The record of the trial consists of 573 typewritten pages, the larger portion of which is devoted to evidence respecting the several sales upon which commissions were allowed to plaintiff. There also were 46 separate exhibits. The able trial judge carefully followed each step in the accounting, often participating by questioning witnesses so as to clear up doubtful matters. Throughout the trial he exhibited a remarkable understanding of the issue involved and the trend of the testimony. We are of the opinion that this is a proper case in which to apply the well-established rule in this state that upon disputed questions of fact the findings of the trial judge in an equity suit will be given great weight in this court. *Hunter v. Hunter,* 207 Or 219, 295 P2d 195; *Nelson v. Hampton,* supra. We find no reason for disturbing those findings in this case.

Perhaps the most important exhibit in this case from plaintiff's standpoint was a letter dated September 6, 1950, and written by the defendant Donald Bookhultz and delivered to plaintiff. It was addressed "To Whom it May Concern," and is as follows:

"Mr. L. H. Flaherty has been an employee of George E. Zweifel & Company approximately a year and a half and at the present time is employed in the capacity of a Machine Tool Salesman.

"At this writing there are machine tools on order for customers, which, *when delivered and paid for,* will earn Mr. Flaherty approximately $7,000.00 in commissions.

"At the present writing, the company has advanced Mr. Flaherty in prepaid commissions an amount of $1,400.00." (Italics ours.)

We quote with approval the following from plaintiff's brief:

"The letter of September 6, 1950 [Ex. 4], is of great significance in evaluating the evidence in respect to procuring cause. By its unmistakable terms respondent [plaintiff] *had earned* commissions which, when paid, would amount to approximately $7,000.00. In preparing the letter appellant [defendant] Bookhultz took into account sales on which commissions totalling $1307.01 were subsequently paid as follows: Mixermobile, $350; Rich Manufacturing Company, $669.44, and Hyster Company, $261.20.

"By simple arithmetic, therefore, a balance of approximately $5692.99 was due respondent. And yet some two and a half years later, when the case came on for trial, appellants unblushingly denied respondent's claim, contending that they and not respondent were the procuring cause of practically every sale." (Italics ours.)

Undoubtedly the trial judge preferred to believe, as do we, the written declaration and admission of defendants made prior to plaintiff's discharge, rather than their belated claims made upon the trial of this suit. It also is significant that in his letter Bookhultz made no mention of the performance of alleged servicing duties on the part of plaintiff as a condition of his right to the commissions earned.

Upon the merits we find no prejudicial error in this case and, therefore, adhere to our original opinion affirming the decree and judgment of the trial court.