Argued September 9, affirmed in part; reversed in part;
remanded November 14, 1975

## CHRISTENSON ET UX, *Respondents, v.* OREGON MODULAR DESIGNED IND. CORP. [sic], *Respondent,* and SWAN, *Appellant.*

541 P2d 1385

*Norman K. Winslow,* Salem, argued the cause and filed briefs for appellant.

*Samuel R. Blair,* Salem, argued the cause and filed a brief for respondents Christenson.

*R. Kent Gardner,* Salem, filed a brief for respondent Oregon Modular Designed Ind. Corp. [sic]

Before O'CONNELL, Chief Justice, and McALLISTER, HOLMAN, TONGUE, HOWELL, and BRYSON, Justices.

McALLISTER, J.

The plaintiffs, Robert E. Christenson and Audrey E. Christenson, brought this action against John Swan and Oregon Modular Design Industries Incorporated to recover damages for the breach of a contract to sell the plaintiffs a modular home. The defendant, John Swan, filed a cross-complaint against Oregon Modular for his compensation for selling the modular home as an agent of or franchise dealer for Oregon Modular.

The case was tried by the court without a jury and the court awarded plaintiffs a judgment against Oregon Modular in the sum of $3,858.50 and a judgment against John Swan for $1,550. The court held that Swan was not entitled to recover on his cross-complaint against Oregon Modular.

John Swan appealed, both from the plaintiffs' $1,550 judgment against him and the judgment denying him recovery on his cross-complaint.

The defendant, Oregon Modular, has not appealed.

Oregon Modular is a manufacturer of prefabricated homes. On March 2, 1973 Swan and Oregon Modular entered into a written franchise agreement under the terms of which Swan was given an exclusive franchise to sell homes manufactured by Oregon Modular in a designated area in the Willamette Valley and Oregon Modular agreed to manufacture homes for sale in the area by Swan.

Early in April 1973 plaintiffs visited the Oregon Modular plant near Salem, looked at prefabricated modular homes, and were given brochures with Oregon Modular's name, address and telephone number. On April 15th the plaintiffs telephoned Oregon Modular and were told a sales representative would call on them. John Swan was sent to plaintiffs' home by Oregon Modular on April 18, 1973. On the same date Swan and the plaintiffs entered into a written contract for the purchase of a modular home known as the Roanoke. The plaintiffs paid Swan $2,750 as a down payment on the sales contract. In turn, Swan paid $1,200 to the owner of a lot upon which the plaintiffs planned to place the modular home. Swan retained the balance of $1,550.

Swan promptly placed the order with Oregon Modular for the Roanoke home and Oregon Modular commenced construction. The plaintiffs testified to several contacts with Oregon Modular employees during June and July, both at the plant and at plaintiffs' home.

Oregon Modular's president testified that he terminated Swan's franchise agreement on June 1, 1973. Although the president testified that he gave Swan a notice of termination in writing, he was unable to produce a copy from his records. Swan testified that he was not notified of the termination until June 24th, that the only notice given was oral, and that no reasons were given to him in explanation of the termination.

On August 11, 1973, plaintiffs visited the Oregon Modular plant to check a detail on the wiring of their modular home. The president of Oregon Modular informed them at that time that their home would not be delivered pursuant to the order placed by Swan. Oregon Modular offered to deliver the home if the plaintiffs would sign a new contract directly with Oregon Modular. Upon advice of counsel plaintiffs refused. Plaintiffs then requested the return of the $1,550 portion of the down payment made to Swan from either Oregon Modular or Swan. Both parties refused to refund the $1,550.

The plaintiffs then brought this action for breach of contract against Swan as an agent of an undisclosed principal and against Oregon Modular as the principal. The plaintiffs' prayer was for $5,137 in special damages and $5,000 general damages. Swan admitted the agency and the breach of contract, but alleged that the principal had been disclosed and was solely liable for the breach. In his cross-complaint Swan demanded judgment against Oregon Modular for the remainder of his "commission" for effecting the sale to the plaintiffs. Oregon Modular denied the allegations of both the plaintiffs and Swan.

As noted above, the trial court awarded plaintiffs a judgment against Oregon Modular in the sum of $3,585.50, from which judgment Oregon Modular did not appeal. The trial court entered judgment against Swan for $1,550 and found that Swan was not entitled to recover on his cross-complaint. Swan has appealed from both findings.

■ We find that there was ample evidence to support the trial court's judgment against Swan in the sum of $1,550. That sum represents the balance of the down payment on the modular home made by the plaintiffs to Swan, which Swan had retained despite

the non-delivery of the home. That portion of the judgment is accordingly affirmed.

■ We turn next to Swan's counterclaim against Oregon Modular for his anticipated compensation on the sale of the modular home to the plaintiffs.

The franchise agreement between Swan and Oregon Modular provided that Oregon Modular would deliver modular homes to Swan at a price designated in the franchise agreement. Swan then had the right to sell the units in the retail market at a price over which Oregon Modular had no control. The compensation to Swan consisted of the difference between the wholesale and the retail price less certain expenses and installation of the unit which Swan was to assume. In this case, his anticipated compensation, according to his undisputed testimony, was $2,804. Whether the franchise agreement was terminated on June 1st or on June 24th, Swan had fully performed under the agreement as to the plaintiffs' order, except for delivery and payment. Neither delivery nor payment could be made because Oregon Modular refused to perform. Swan was formally notified by letter dated August 15, 1973 that Oregon Modular would not produce any homes for him.

A lot had been purchased by the plaintiffs for placement of the modular home. Financing for the purchase price had been arranged through the Oregon Department of Veterans' Affairs and was approved June 28. Plaintiffs had procured a building permit and septic tank permit. Plaintiffs paid $50 to Oregon Modular on June 29 for a substitution of appliances in the modular home. Arrangements had been made for clearing the lot, laying the foundation and installing the modular home and the septic tank.

It is clear that Oregon Modular's actions throughout June and July indicated an intention to complete

construction of the modular home for the plaintiffs. There was no evidence prior to the conversation of August 11, 1973 that Oregon Modular intended the termination of Swan's dealership to have any effect on orders placed by Swan prior to termination. Besides the personal contacts made during June and July a letter was mailed to the plaintiffs by Oregon Modular dated July 2, which read:

"I am enclosing another set of blueprints on the new home which we are presently building for you.

"Please instruct [J]oe Baertlein to NOT install the foundation between the garage and the house until the house is placed on the foundation. We will be phoning you to come and see the house here at the plant."

Swan's right to his anticipated compensation from the sale of the modular home to the plaintiffs could not be affected by the termination of the franchise agreement by Oregon Modular. Nor could it be affected by Oregon Modular's refusal to perform or the fact that the modular home was not delivered or paid for prior to the termination of Swan's relationship with Oregon Modular. *Lenchitsky v. H. J. Sandberg Co.,* 217 Or 483, 487-488, 343 P2d 523 (1959); *Flaherty v. Bookhultz et al,* 207 Or 462, 480-482, 291 P2d 221, 297 P2d 856 (1956). In *Lenchitsky v. H. J. Sandberg Co.,* supra, we said:

"The governing principle was expressed in the opinion on rehearing in *Flaherty v. Bookhultz,* 207 Or 462, 481, 482, 291 P2d 221, 297 P2d 856 (1956), where the facts were substantially similar to those in the case at bar (207 Or, supra, p 474-479). There, we approved and applied the following statement of the rule found in 3 CJS 88, Agency § 187:

" '* * * Accordingly, an agent selling goods on commission is entitled to a commission on goods sold by him during the continuance of the agency, although the goods were not de-

livered or paid for, or even where the orders were not received by the principal, until after the termination of the relationship. If the contract contemplates that the agent shall receive compensation for sales of which the agent was the procuring cause, the agent is entitled to a commission on sales procured by him although the sales were actually consummated by the principal after the termination of the agency.'

See, also, *Zinn v. Ex-Cell-O Corporation*, 24 Cal2d 290, 149 P2d 177, 180; *Dibble v. Dimick*, 143 NY 549, 38 NE 724, 725, cited in *Flaherty v. Bookhultz*, supra, at p 481." 217 Or at 487.

It is clear from the evidence that Swan would have made a net profit or commission of $2,804 as his compensation for procuring the sale to the plaintiffs. This amount was not disputed by Oregon Modular. Oregon Modular's refusal to perform and its termination of the dealership did not defeat this right. In the absence of any evidence to the contrary, Swan is entitled to his commission as a matter of law. The trial court erred in denying Swan's counterclaim.

The judgment of the trial court in favor of plaintiff and against Swan is affirmed, the judgment dismissing Swan's cross-claim is reversed, and the case is remanded with instructions to enter a judgment in favor of Swan and against Oregon Modular consistent with this opinion.