Argued and submitted October 3, 1980,
reversed and remanded April 13, 1981

HICKS et al,
*Appellants,*
*v.*
POLK COUNTY FARMERS' CO-OP,
*Respondent.*

(No. 26118, CA 16709)

627 P2d 890

Richard H. Allen, Salem, argued the cause for appellants. With him on appellant's brief was Allen, Stortz, Barlow, Fox & Susee, Salem. On appellant's reply brief was Lynda D. St. Jean, Salem.

David J. Sweeney, Portland, argued the cause for respondent. With him on the brief were Douglas R. Grim, and Gilbertson, Brownstein, Sweeney, Kerr & Grim, Portland.

Before Joseph, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

Plaintiffs filed a complaint in equity, seeking a declaratory judgment under ORS Chapter 28 adjudicating the rights and obligations of plaintiffs and defendant as to certain "Certificates of Preferred Interest" issued by defendant and declaring plaintiffs' entitlement to payment of the face value of said certificates with interest. The case was submitted to the court on the issue of whether plaintiffs were entitled to payment of the certificates on demand or at the discretion of defendant. The trial court ruled in favor of defendant and plaintiffs appeal, assigning as error the trial court's finding that the certificates were payable only at the discretion of the defendant, rather than on demand by the holder.

On appeal, defendant challenges the equitable jurisdiction of the trial court. While defendant correctly points out that the treatment of a declaratory judgment proceeding as either legal or equitable is dependent upon the essential nature of the case, *Hartford v. Aetna/Mt. Hood Radio,* 270 Or 226, 527 P2d 406 (1974), it failed below to object to the trial court's exercise of equitable jurisdiction.

"[A] party, contending upon appeal that equity had no jurisdiction to render a decree, must make timely objections in the trial court unless the subject is wholly outside of equity's jurisdiction." *Lane County Escrow v. Smith, Coe,* 277 Or 273, 281, 560 P2d 608 (1977).

Here, plaintiffs requested in their complaint that defendant specifically perform the agreement. Hence, the proceeding is not "clearly beyond the pale of equitable cognizance." *Flaherty v. Bookhultz et al,* 207 Or 462, 472-73, 291 P2d 221, 297 P2d 856 (1956); *cf. Nelson et al v. Hampton et ux,* 206 Or 573, 579-80, 294 P2d 329 (1956).

Turning to the merits of the case, plaintiff William H. Hicks was employed by defendant from 1969 to 1977, primarily in the capacity of manager. In 1974 and 1975, plaintiffs purchased two "Certificates of Preferred Interest" for $10,000 each from defendant. Shortly after Mr. Hicks left his employment with defendant in May, 1977, plaintiffs demanded payment of the certificates. Defendant

refused to pay on the ground that another buyer must be found prior to redemption. Then, in November, 1977, defendant's Board of Directors passed a resolution that certificates could not be redeemed unless they were called in by the cooperative. Mr. Hicks' successor, the current manager of the cooperative, testified that the Board's action was partially in response to plaintiffs' request for payment. He stated:

"Mr. Hicks at that time wanted $20,000 plus interest. We couldn't pay it because we didn't have, you know, the operating capital to pay it. And the Board felt at that time it is in the best interest of the co-op to not transact anymore on these [certificates]."

The certificate issued in July, 1974, appears as follows:

This Certificate Has No Maturity Date
No. 163
Incorporated under the Cooperative Association Laws of the State of Oregon

POLK COUNTY FARMERS' CO-OP
Rickreall, Oregon
Certificate of Preferred Interest
Subordinate To All Claims of Creditors

THIS IS TO CERTIFY THAT William H. Hicks or Jeanne G. Hicks is the owner of $10,000.00 of Preferred Interest in the POLK COUNTY FARMERS' CO-OP of Rickreall, Oregon.

Certificates of Preferred Interest are subject to the Articles of Association and the By-Laws of the Association; they shall be non-assessable, bear interest at the rate of 8% per annum payable on the 31st day of December of each year; shall be transferable on the books of the Association, and shall be callable serially in the order of their issuance. Provided, however, the Association shall have the right to off-set any indebtedness owing to it by the holder thereof prior to making the transfer on the books of the Association.

Certificates of Preferred Interest shall not entitle the owner or holder thereof to the right to vote or to otherwise participate in the meetings or affairs of the Association.

In the event of liquidation or dissolution of the Association, outstanding Certificates of Preferred Interest plus accrued interest thereon shall be paid at par without

regard to priority of issuance prior to redemption of other patron equities, but shall be subordinate to all claims of creditors.

IN WITNESS WHEREOF, the POLK COUNTY FARMERS' CO-OP, has caused this Certificate of Preferred Interest to be signed by its President and Secretary, and its corporate seal to be hereunto affixed this 10th day of July, 1974.

/s/ W. H. Hicks                    /s/ H. B. Hildebrand
_____                    _____
Secretary                          President

The certificate issued in March, 1975, is identical to the above certificate except for the date and serial number. On June 6, 1979, the aggregate amount of outstanding certificates was $143,735.

Specific characterization of the certificates is difficult. The trial court aptly described them as "neither fish nor fowl." At first glance, they might appear to be preferred stock. However, the Supplementary Articles of Association, adopted on February 6, 1945, provide in Article V:

"This association *shall not have any capital stock,* but shall admit members into the association upon the payment of a membership fee of $1.00 * * * ." (Emphasis supplied.)

The original Articles of Association provided in Article V:

"The capital stock of this association shall be twenty-four thousand dollars ($24,000.00) divided into 2,400 shares, and the par value of each share shall be ten dollars ($10.00). *Of the 2,400 shares authorized, 1,600 shares shall be common stock and 800 shares shall be preferred stock."* (Emphasis supplied.)

Thus, the Supplemental Articles preclude issuance of preferred stock.

The certificates, at the very least, evidence a promise on defendant's part to pay, the central question being - "To pay when?"

■       Taking the four corners of the documents, each certificate provides at the top:  "This Certificate Has No Maturity Date." On the other hand, each states that the certificates "shall be callable serially in the order of their

issuance." These provisions are sufficiently ambiguous to necessitate resort to parol evidence. ORS 41.740. Where a contract is ambiguous, it is construed most strongly against the drafter. *Meskimen v. Larry Angell Salvage Co.,* 286 Or 87, 93, 592 P2d 1014 (1979).

■■    In ascertaining the true intent and meaning of a contract under the rules governing construction in cases of ambiguity, a court must

"* * * consider all circumstances accompanying or surrounding the transaction, giving great weight to the principal apparent purpose of the parties, and so far as possible, placing itself in the position of the contracting parties. [Citations omitted.] * * * It must take note of ORS 41.740, the statutory parol evidence rule and the proviso therein that 'this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220, or to explain an ambiguity, intrinsic or extrinsic, * * *.' *Garrett v. Eugene Medical Center,* 190 Or 117, 130, 224 P2d 563. It must apply the familiar rule that

"'The practical interpretation of the terms of a contract made by the parties while performing it is universally deemed a safe guide to the intended meaning of the instrument.' *Kontz v. B. P. John Furniture Corp.,* 167 Or 187, 115 P2d 319."

*Doherty et ux v. Harris Pine Mills,* 211 Or 378, 402-03, 315 P2d 566 (1957).

Furthermore, the conduct of other certificate holders and defendant with respect to payment or redemption of these certificates prior to plaintiffs' demand for payment is entitled to great weight in construing the meaning of the certificates. *Burton v. Or.-Wash. R. & N. Co.,* 148 Or 648, 656, 38 P2d 72 (1934).

The first certificates were issued by defendant in 1956. According to the records of the cooperative, commencing as far back as 1959, in no less than 30 instances, certificates had been redeemed upon the demand of the holders. Mr. Hicks testified that when he was manager and secretary of the cooperative from 1971 to 1977, all sales or redemptions of certificates were made through his office. He stated that the cooperative would redeem the certificates within a week or two after demand. During this time,

and prior to the plaintiffs' purchase of their first certificate in July, 1974, Mr. Hicks had redeemed at least seven certificates on behalf of the defendant for other holders. His understanding when he purchased the certificates was that they would be redeemed upon reasonable notice. Defendant's office manager testified that when persons purchasing certificates inquired as to whether they could redeem them, they were told they could get their money back within a reasonable time as long as the cooperative was financially sound, i.e., not bankrupt.

The present manager of the cooperative, who was employed by defendant off and on since 1966, testified that prior to May, 1977, the time plaintiffs asked for redemption, purchasers of certificates inquiring as to their right of redemption were told that the money would be available within a reasonable time. He stated that, due to the cooperative's financial condition since that time, it has not allowed any redemptions. When asked whether they have turned down people who wanted to redeem certificates, he testified:

"A   Besides Bill, we had two more that have requested redemption that we haven't redeemed them.

"Q   Well, over how long a period of time?

"A   Within the last couple of months.

"Q   Have you told those people that they are not going to get their money back?

"A   No, we haven't.

"Q   What did you tell them?

"A   We told them it wouldn't be available at this time because of pending litigation."

After reviewing the testimony and evidence presented, we conclude that the certificates were treated by the defendant and the purchasers of them as payable on demand within a reasonable time.[1] Thus, plaintiffs are entitled to payment of the $20,000 invested, plus interest.

Reversed and remanded.

---

[1] Defendant concedes in its brief that

"[t]he history of defendant has indicated that, through its records and actions, it has consistently redeemed certificates within a reasonable period of time, upon the request of the holder (Ex. 5, 6)."